# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MARINER HEALTH CENTRAL, INC., *et al.*,[1] | Case No. 22-10877 (    ) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES, (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT, (IV) REQUIRING UTILITY PROVIDERS TO RETURN DEPOSITS FOR UTILITY SERVICES NO LONGER IN USE, AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for the entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order," and together the "Proposed Orders") (i) determining adequate assurance of payment for future utility services, (b) prohibiting utility providers from altering, refusing, or discontinuing services, (c) establishing procedures for determining adequate assurance of payment, (d) requiring utility providers to return deposits for utility services no longer in use, and (e) granting related relief. In support of the Motion, the Debtors rely on the *Declaration of Lawrence Perkins in Support of First Day Relief and First Day Pleadings* (the "First Day Declaration") filed contemporaneously herewith and respectfully represent as follows:

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are Mariner Health Central, Inc. (6203), Parkview Holding Company GP, LLC (1536), and Parkview Operating Company, LP (7273). The Debtors' headquarters are located at 3060 Mercer University Drive, Suite 200, Atlanta, GA 30341.

1

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and may be determined by the Court.

2. The bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(m) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3. The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion if later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

4. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases. The Debtors have also filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

5. The three Debtors, Mariner Health Central, Inc. ("Mariner Central"), Parkview Holding Company GP, LLC ("Parkview Holdco") and Parkview Operating Company, LP ("Parkview"), are part of the Mariner Health Care group of healthcare services providers, consultants and holding companies (collectively, the "Mariner Companies"), all of which are direct or indirect subsidiaries of non-Debtor Mariner Health Care, Inc. Certain of the Mariner Companies operate 20 skilled nursing facilities (the "Mariner Facilities"), with nearly 2,200 licensed beds and approximately 3,100 employees, that provide short-term rehabilitation, comprehensive post-acute skilled care, long-term care, therapy, and other services. For more than 30 years, the Mariner Facilities have delivered quality, affordable care to historically underserved persons and communities. Additional information regarding the Debtors' operations, structure, liabilities, and the events leading up to the commencement of these cases is set forth in the First Day Declaration, which is incorporated herein by reference.[2]

6. In the ordinary course of their operations, the Debtors obtain electricity, natural gas, water, telephone, internet, and other such services (collectively, the "Utility Services") from a number of utility companies and providers (collectively, the "Utility Providers") and incur obligations for such services. A non-exclusive list of the Utility Providers as of the Petition Date is attached hereto as **Exhibit C** (the "Utility Service List").[3]

7. As shown on Exhibit C, the Debtors typically incur charges of approximately $42,000 per month for the Utility Services, which amounts are timely paid in the ordinary course of business. Also as shown on Exhibit C, one of the Utility Providers, PG&E, holds a security

---

[2] Capitalized terms used but not defined herein have the meanings given in the First Day Declaration.
[3] Although Exhibit C is intended to be comprehensive, one or more Utility Providers may have been inadvertently omitted. The Debtors' requested relief is applicable to all Utility Services and Utility Providers, regardless of whether such service or provider is specifically identified on Exhibit C, unless expressly noted otherwise herein.

deposit in the amount of $13,776 for gas and electric services at the Parkview facility (the "Existing Utility Deposit"), which amount is approximately 1.4 times the typical monthly charge.

8. Uninterrupted Utility Services are essential to the Debtors' provision of services, including medical care by Parkview to its patients and the provision of support services by Mariner Central to Parkview and other Mariner Company skilled nursing facilities. Any interruption, however brief, to utility services to the Debtors will result in a serious disruption of the Debtors' operations and dramatically affect resident care. Therefore, it is critical that the Court prohibit the Utility Providers from altering, refusing, or discontinuing service to the Debtors without further order of this Court. The deposit and procedures described herein, with the streamlined mechanism for requesting further adequate assurance described below, provides adequate assurance of payment for each of the Utility Providers as well as safeguarding the Debtors' continuing operations and the health and safety of their patients.

## RELIEF REQUESTED

9. The Debtors seek entry of orders: (a) determining adequate assurance of payment for future utility services; (b) prohibiting utility providers from altering, refusing, or discontinuing services; (c) establishing procedures for determining adequate assurance of payment; (d) requiring utility providers to return deposits for utility services no longer in use; and (e) granting related relief. In addition, the Debtors request that the Court schedule a final hearing to consider entry of the Final Order.

**A. Proposed Adequate Assurance of Payment and Procedures**

10. Consistent with their prior practice, the Debtors intend to pay postpetition Utility Services Obligations in a timely manner. Cash held by the Debtors, cash generated in the ordinary course of business, and cash available to the Debtors under their proposed postpetition financing

facility will provide sufficient liquidity to timely pay the Debtors' Utility Services Obligations in the ordinary course and consistent with their prepetition practice.

11. To provide additional assurance of payment, the Debtor propose to deposit (to the extent not already deposited) into one or more segregated accounts the aggregate amount of $22,000.00 (the "Adequate Assurance Deposit"), which represents an amount approximately one-half of the Debtors' average monthly cost for Utility Services, calculated based on the Debtors' average utility expenses over the prior 12 months. The Debtors request the authority to adjust the amount of the Adequate Assurance Deposit to account for the termination, if any, of Utility Services by the Debtors or by agreement between the Debtors and the affected Utility Provider without further order of the Court. In this manner, the Debtors propose to provide adequate "assurance of payment" by providing the Utility Providers with cash deposits equal to or approximately one-half of the Utility Providers' "average monthly bill" as reflected in Exhibit C, in a total sum not to exceed the Adequate Assurance Deposit, in accordance with Section 366(c)(1)(A)(i) of the Bankruptcy Code.

12. The Adequate Assurance Deposits will be held in segregated accounts (the "Adequate Assurance Accounts") at Bank of America, N.A. for the sole benefit of the Utility Providers for the duration of these chapter 11 cases, and may be applied to any postpetition payment defaults owed to the Utility Providers by the Debtors. The Adequate Assurance Deposit will be held by the Debtors, and no liens will encumber the Adequate Assurance Deposit or the Adequate Assurance Account. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in accordance with their prepetition practices (collectively, with the Existing Utility Deposit as applicable, the "Proposed

Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

13. Nevertheless, if any entity believes that it is a Utility Provider and seeks to make a request for additional adequate assurance of future payment (each, an "Adequate Assurance Request"), the Debtors request they be required to do so pursuant to the following procedures (the "Adequate Assurance Procedures"):

    a. The Debtors will serve a copy of this Motion, and the order granting relief requested herein on an interim basis, on each Utility Provider within two business days after entry of such order by the Court.

    b. Subject to paragraphs (e)–(i) herein, to the extent not already deposited into the Adequate Assurance Accounts, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $22,000, in the Adequate Assurance Accounts within ten business days after entry of the Interim Order.

    c. Each Utility Provider, other than any Utility Provider holding a prepetition security deposit, shall be entitled to the funds in the Adequate Assurance Account equal to or approximately one-half of the Utility Providers' "average monthly bill" as reflected in the Utility Service List.

    d. If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to: (i) proposed counsel to the Debtors, Raines Feldman LLP, 1350 Avenue of the Americas, 22nd Floor, New York, NY 10019-4801, Attn: Hamid R. Rafatjoo (hrafatjoo@raineslaw.com) and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705, Attn: Laura Davis Jones (ljones@pszjlaw.com); (ii) counsel to any statutory committee appointed in these cases; and (iii) those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors shall honor such request within five business days after the date the request is received by the Debtors, subject to the ability of the Debtors and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court after consultation with counsel to the agents under the Debtors' postpetition financing facility. To the extent a Utility Provider receives a disbursement from the Adequate Assurance Accounts, the Debtors shall replenish the Adequate Assurance Accounts in the amount disbursed.

e. Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties.

f. Any Utility Provider that objects to the Debtors' Proposed Adequate Assurance must serve an Additional Assurance Request on the Notice Parties.

g. Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) include the alleged outstanding balance for the affected account(s); (iv) certify the amount that is equal to one-half the average monthly cost of the Utility Services the Utility Provider supplies to the Debtors over the prior 12-month period; (v) provide evidence that the Debtors have a direct obligation to the Utility Provider; and (vi) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

h. Any Utility Provider who does not file an Additional Assurance Request shall be: (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code; and (ii) forbidden to discontinue, alter, or refuse services to, or discriminate against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

i. Upon the Debtors' receipt of an Additional Assurance Request, the Debtors shall have 21 calendar days from the receipt of the Additional Assurance Request (the "Resolution Period") to negotiate with the Utility Provider to resolve such Additional Assurance Request.

j. Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtors determine that the Additional Assurance Request is reasonable.

k. If the Debtors determine that the Additional Assurance Request is not reasonable and the Debtors are unable to reach an alternative resolution with the Utility Provider, the Debtors, during or immediately after the Resolution Period, will request a hearing (a "Determination Hearing") before the Court at the next scheduled omnibus hearing to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

l. Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider shall be prohibited from altering, refusing, or discontinuing service to the Debtors.

  m. The Adequate Assurance Deposit deposited into the Adequate Assurance Account on behalf of any Utility Provider (including any additional amount deposited upon request of any applicable Utility Provider), or any portion thereof, shall be returned to the Debtors, <u>less</u> any amounts owed on account of unpaid, postpetition Utility Services, by no later than five business days following the earlier of the date upon which (i) a chapter 11 plan becomes effective after being confirmed in these chapter 11 cases or (ii) the Debtors provide notice to a Utility Provider that services provided to the Debtors by such Utility Provider will no longer be needed or will be reduced.

14. The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtors to administer their chapter 11 estates uninterrupted. More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by serving an Additional Assurance Request upon the Notice Parties. The Debtors, in their discretion, may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court. If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtors may seek Court resolution of the Additional Assurance Request.

15. Absent compliance with the Adequate Assurance Procedures, the Debtors request that all Utility Providers, including subsequently added Utility Providers, be forbidden from altering, refusing, or discontinuing service or requiring additional assurance of payment other than the Proposed Adequate Assurance. The relief requested herein is for all Utility Providers providing Utility Services to the Debtors and is not limited to those parties or entities listed on the Utility Service List.

## B. **Subsequently Identified Utility Providers.**

16. To the extent the Debtors identify new or additional Utility Providers or discontinue services from existing Utility Providers, the Debtors seek authority to add or remove parties from the Utility Services List. For any Utility Provider that is subsequently added to the Utility Services

List, the Debtors will serve such Utility Provider with a copy of the Court's order regarding Utility Services, including the Adequate Assurance Procedures, and increase the Adequate Assurance Deposit by an amount equal to two weeks of the Debtors' average cost of services from the subsequently added Utility Provider. The Debtors request that the terms of such Utility Services order and the Adequate Assurance Procedures apply to any subsequently identified Utility Provider to the same extent as if the Utility Provider was listed on the original Utility Providers List attached hereto. For any Utility Provider that is subsequently removed from the Utility Providers List, the Debtors request the authority to decrease the Adequate Assurance Deposit by an amount equal to two weeks of the Debtors' average cost of services from such removed Utility Provider.

## BASIS FOR RELIEF

17. Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date. *See* 11 U.S.C. § 366. Section 366(c) requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility provider within thirty days of the Petition Date, or the utility provider may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) enumerates what constitutes "assurance of payment." 11 U.S.C. § 366(c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtors' ability to pay. *See, e.g., Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.),* 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) ("adequate assurance of payment" does not require an absolute guarantee of payment); *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of

payment in full"); *In re Anchor Glass Container Corp.,* 342 B.R. 872, 875 (Bankr. M.D. Fla. 2005) ("Section 366 requires a determination that a utility is not subject to unreasonable risk of nonpayment, but does not require a guarantee of payment"); *Steinebach, Jr. et al. v. Tucson Elec. Power Co. (In re Steinebach, Jr., et al.),* 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) (adequate assurance of payment is not absolute assurance of payment); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . adequate assurance of payment. The statute does not require an absolute guarantee of payment." (internal quotation and citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997); *Hennen v. The Dayton Power & Light Co. (In re Hennen),* 17 B.R. 720, 725 (Bankr. S.D. Ohio 1982) ("[a]dequate assurance does not require an absolute guarantee of payment, and is largely a factual determination").

18. When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.),* 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002). Courts have recognized that, in determining the requisite level of adequate assurance, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (*citing In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would

"jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Accordingly, demands by a Utility Provider for a guarantee of payment should be refused when the Debtors' specific circumstances already afford adequate assurance of payment.

19. Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course, either from operating revenues or from availability under the Debtors' proposed postpetition financing facility, provides assurance of the Debtors' payment of their future obligations. Moreover, termination of any Utility Services could result in the Debtors' inability to operate their business to the detriment of their residents and all stakeholders. *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

20. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g., In re Circuit City Stores Inc*., No. 08-35653 (KRH), 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) ("The plain language of § 366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order."). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* Here, notwithstanding a determination that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections

366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at *5–6. The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *6. The Adequate Assurance Procedures, however, avoid a disorganized process whereby each Utility Provider could make a last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at *5.

21. Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, the Court should grant the relief requested herein. Similar procedures have been approved by courts in this district. *See, e.g.*, *In re First Guaranty Mortgage Corporation*, 22-10584 (CTG) (Bankruptcy D. Del. July 1, 2022); *In re RentPath Holdings, Inc.*, Case No. 20-10312 (BLS) (Bankr. D. Del. Feb. 13, 2020) (approving adequate assurance deposit equal to one-half of debtor's average monthly utility expenses); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 26, 2019) (same); *In re ATD Corp.,* Case No. 18-12221 (KJC) (Bankr D. Del. Oct. 26, 2018) (same); *In re VER Technologies Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. May 4, 2018) (same).[4]

22. Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the

---

[4] Because of the voluminous nature of the orders cited herein and their lack of novelty, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

Bankruptcy Code, particularly section 366. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

23. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and the proposed debtor-in-possession financing. Under the Debtors' existing cash management system, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

24. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, prohibiting Utility Providers from altering or discontinuing services, authorizing the Debtors to deposit the Proposed Adequate Assurance, and granting the other relief requested herein are integral to the Debtors' ability to transition their operations into these chapter 11 cases smoothly, and to properly care for the well-being of their patients. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and may risk critical care for patients. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their

estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

25. Similarly, unless the Court orders otherwise, Bankruptcy Rule 6004(a) requires the Debtors to provide 21 days' notice to all creditors and certain other parties in interest of the use of property outside of the ordinary course of business. *See* Fed. R. Bankr. P. 6004(a). Moreover, unless the Court orders otherwise, Bankruptcy Rule 6004(h) automatically stays for 14 days any order granting such relief. *See* Fed. R. Bankr. P. 6004(h). Based on the nature of the relief requested herein, to the extent applicable, the Debtors submit that, as described above and in the First Day Declaration, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors that would result from delay in the relief requested herein. Therefore, the Debtors request that the Court enter an order providing that the notice given of the relief requested herein is sufficient and satisfies all applicable requirements, and that such relief shall be immediately effective.

## **RESERVATION OF RIGHTS**

26. Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or shall be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or

limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's Interim Order and Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's right to subsequently dispute such claim.

## NOTICE

27. Notice of this Motion is being provided to: (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) the United States Attorney for the District of Delaware; (iv) the Centers for Medicare & Medicaid Services; (v) the Attorney General for the State of California; (vi) all parties on the Debtors' consolidated list of 30 largest unsecured creditors; (vii) the Utility Providers listed on Exhibit C; and (ix) all parties entitled to notice pursuant to Local Rules 2002-1(b) and 9013-1(m). As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-l(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

28. No prior request for the relief sought in this Motion has been made to this or any other court.

# CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein, and such other and further relief as is just and proper.

Dated: September 19, 2022  
      Wilmington, Delaware

/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Mary F. Caloway (DE Bar No. 3059)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
tcairns@pszjlaw.com
mcalloway@pszjlaw.com

- and -

Hamid R. Rafatjoo (*pro hac vice* pending)
Carollynn H.G. Callari (*pro hac vice* pending)
David S. Forsh (*pro hac vice* pending)
**RAINES FELDMAN LLP**
1350 Avenue of the Americas, 22nd Floor
New York, NY 10019-4801
Telephone: (917) 790-7100
Email: hrafatjoo@raineslaw.com
ccallari@raineslaw.com
dforsh@raineslaw.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*