**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 22-10877 (LSS) |
| MARINER HEALTH CENTRAL, INC., *et al.*,[1] | ) | (Joint Administration Requested) |
| | ) | |
| Debtors. | ) | **Hearing Date: October 25, 2022 @ 11:00 am** |
| | ) | **Obj. Deadline: October 18, 2022 @ 4:00 pm** |

**MOTION TO TRANSFER VENUE OF BANKRUPTCY CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA OAKLAND DIVISION**

By this Motion, the Ledesma Action Plaintiffs ("Ledesma Action Plaintiffs"), and the below listed creditors who have claims against nursing homes operated and managed by debtor Mariner Health Central, Inc., seek the entry of an order transferring venue of the Debtors (the "Motion") to the United States Bankruptcy Court for the Northern District of California, Oakland Division (the "USBCND"). In addition to the Ledesma Action Plaintiffs, the following creditors of Mariner Health Central, Inc. bring this motion: (1) Filimon Arzeta, Jesse Garret, Janet Horrobin, Teresa Meadors and Christine Vassis; (2) Atira Washington, Atara Washington, Donald Johnson Jr., Tia Johnson, Enovy Johnson; (3) Jason Tucker, Casey Tucker, Stephen Tucker; (4) Susan Myung Won, Soon Choi Hyo, Young Jung Hyo and Brian Byung Hwa Chung; (5) Dana Greene-Coward; and, (6) Tracy Jackson, Davonte Barfield, Avis Dewalt.

In support of this Motion, the Ledesma Action Plaintiffs and the other above-listed creditors (collectively, the "Moving Parties") state as follows:

I.    **INTRODUCTION**

1.    The Ledesma Action Plaintiffs hold claims against the Debtors arising in the case

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are Mariner Health Central, Inc. (6203), Parkview Holding Company GP, LLC (1536), and Parkview Operating Company, LP (7273). The Debtors' headquarters are located at 3060 Mercer University Drive, Suite 200, Atlanta, GA 30341.

of *Ledesma et al. v. Mariner Health Care, Inc., et al.*, Case No. RG19-025110, Superior Court of State of California., County of Alameda (the "Ledesma Action").  In the Ledesma Action, the Court reduced to judgement the findings by the jury against Debtor, Parkview Operating Company, LP ("Parkview"), and Debtor, Mariner Health Central, Inc. ("Mariner Central"), in the amount of $14,911,914.00, inclusive of fees and costs and with interest at the rate of ten percent (10%) per annum from the date of the entry of judgment until paid (collectively, the "Ledesma Judgment"). A copy of the Ledesma Judgment is attached hereto as Exhibit "A" to the Declaration of Susan Kang Gordon ("Gordon Decl.")

2.      Debtors, Parkview and Mariner Central, operate a skilled nursing facility with 121 beds in Hayward, California. Mariner Central contracted to provide administrative, clinical and operational support to Parkview. See Declaration of Lawrence Perkins in Support of Chapter 11 Petitions and First Day Pleadings (the "Perkins Declaration") [Docket No. 12], ¶ 11.  Parkview and Mariner Central's care and custody of their elderly and dependent adult patients' basic care needs at the Parkview facility was established in the Ledesma Action. For eight of the ten Ledesma residents, the jury found that Mariner Central and Parkview each committed neglect.

3.      Debtor Mariner Central also operates the following skilled nursing facilities where creditors personally or their family members resided:  (1) Filimon Arzeta, Theresa Meadors, Christine Vassis, James Martin, Janet Horrobin and Jesse Garrett were residents at Parkview Healthcare Center in Hayward, CA; (2) Donald Johnson was a resident at Driftwood Healthcare Center in Hayword, CA; (3) Christopher Tucker was a resident at Fruitvale Healthcare Center  in Oakland, CA; (4) Susan Myung Won was a resident at Skyline Healthcare Center in San Jose, CA; (5) Dana Greene-Coward was a resident at Parkview Healthcare Center in Hayward, CA; and, (6) Tracy Jackson, Davonte Barfield, Avis Dewalt were residents at Pineridge Healthcare Center in

San Rafael, CA.

4.      While the Mariner companies have over 50 related entities, only three were put into bankruptcy.  *Id*. at FN 3.    The Mariner companies' operations primarily relate to twenty (20) skilled nursing facilities in California.    Id. ¶ 9.  Debtors have never had patients or customers in Delaware.  In contrast, four of the ten Ledesma Action Plaintiffs are still alive and in fragile conditions in California.

5.      In response to the Ledesma Judgment, the Debtors filed their Bankruptcy Petitions in the Delaware Bankruptcy Court.  Id.  ¶ 7.  As the Debtors stated at the first day hearing, the judgment entered in August of 2022 and the inability to satisfy the bond requirement of approximately $22 million to $28 million to have the Ledesma Judgement stayed was the reason they filed for bankruptcy.  In other words, they did not want the Ledesma Action Plaintiffs to begin collecting on the Ledesma Judgment and they did not want to post a bond to stave off the collection efforts.

6.      Other than the state of incorporation, the Debtors have no connection to the State of Delaware.  They have no assets or employees in Delaware. Rather, the main reasons for the bankruptcy are a judgment and appeals occurring in California.  The Debtors currently have on file a Motion for Relief from the Automatic Stay to seek to continue the appeals in California. The main focus of the Debtors' petition is to resolve a California matter. "The Debtors intend to engage their creditors, in particular the holders of the Ledesma Judgment, to explore a consensual resolution of disputes within the circumstances of these Chapter 11 Cases."  Perkins Declaration ¶ 8. All tort actions are in California. Most of the creditors are in California, including the Moving Parties, and it appears that most of the debts and liabilities have arisen in California based on California contracts.

7.      The Debtors do not cite to any employees in Delaware. The Debtor entities have their office leased and paid by California operations, their officers and directors compensated by California operations, their insurance paid and held by the California operation, their taxes paid by California operation (Tabler depo p. 20-24, 29-37; Owen depo page 32). "I believe in Oakland, we have a billing office, which is -- you know, could -- could accommodate, you know, 20, 25 people. But if people need it, they can use that location." (Tabler depo, p. 28 lines 1-6). "…[T]he office in Northern California for Mariner Health Central, Inc. is actually in Hayward…" (Taetz depo, page 30, lines 11-12). Excerpts from the Deposition transcripts of Kenneth Tabler, Kristy Prince Owens and Linda Taetz are attached as Exhibit "B" through "D" to the Gordon Decl.

8.      In addition to the Ledesma Judgment, Parkview and Mariner Central are under a California Court imposed injunction (the "Ledesma Injunction"). The Ledesma Injunction requires Parkview "… to comply with applicable staffing and specified health and safety statutes or regulations, imposing periodic reporting requirements, and providing for the appointment of a monitor to ensure such compliance. On February 8, 2022, the Ledesma Action court entered an order appointing Kathryn Jean Page as the monitor. Perkins Declaration ¶ 27. Ms. Page, upon information and belief, resides in California.

9.      The Debtors also cite to two other actions of "particular note", the Integra Action and the PSC Actions. It is telling that both these actions are taking place in California. Id. ¶ 28. It is important to note that Debtors are not named defendants in the Integra Action.

10.     Additionally, as one or more of the Debtors qualify as a "heath care business" under title 11 of the Bankruptcy Code, this Court will have to appoint a patient care ombudsman "to monitor the quality of patient care and to represent the interest of the patients of the health care business" as set forth in section 333 of the Bankruptcy Code. Debtors are subject to the laws and

regulations in the State of California in their operations of the nursing home.

11.     This Court should transfer venue as it has in similar health care cases.  The transfer of venue would be in the best interest of the patients and other stake holders to the have the local bankruptcy court handle the wind down or sale of a local facility.  See generally, *In Re LMCHH PCP LLC* C.A. No. 17-10201-LSS and *Highland Arkansas Holdings, LLC*, C.A No. 16-11330-LSS.

12.     As set forth herein, overwhelming cause exists to transfer venue of the Debtors' bankruptcy cases to the USBCND. The interests of creditors, employees and other interested parties are best served by having this bankruptcy case administered by the USBCND. That is where Parkview and Mariner Central operate and the assets are located, where the appeal of the Ledesma Judgment will be heard and where the Debtors are subject to the Ledesma Injunction.

## II.     VENUE TRANSFER TO UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF CALIFORNIA IS WARRANTED

13.     Under 28 U.S.C. §§ 1404, 1408 and 1412, and under Bankruptcy Rule 1014, a bankruptcy court may transfer venue of a bankruptcy case in "the interest of justice or for the convenience of the parties." 28 U.S.C. §§ 1404, 1408 and 1412; Fed. R. Bankr. 1014.

14.     In determining whether a venue transfer would serve the convenience of the parties, courts generally examine the following six factors:

    a.      the proximity of creditors of every kind to the court;

    b.      the proximity of the debtor to the court;

    c.      the proximity of the witnesses necessary to the administration of the estate;

    d.      the location of the assets;

    e.      the economic administration of the estate; and

    f.      the necessity for ancillary administration if liquidation should result.

*Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co.* (*In re Commonwealth Oil Refining Co.*), 596 F.2d 1239, 1247 (5th Cir. 1979); *In re Caesars Entm't Operating Co.*, 2015 Bankr. LEXIS 314, at *19 (Bankr. D. Del. Feb. 2, 2015); *In re Enron Corp.*, 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002). Under this analysis, "the factor given the most weight is the promotion of the economic and efficient administration of the estate." *Enron*, 274 B.R. at 343.

15.     In addition, several courts have included as an additional consideration or factor, "a state's interest in having local controversies decided within its borders." *In re Standard Tank Cleaning Corp.*, 133 B.R. at 567 (citing *Portjeff Development*, 118 B.R. 184, 193 (Bankr. E.D.N.Y. 1990); *In re Toxic Control Technologies, Inc.*, 84 B.R. 140, 143 (Bankr. N.D. Ind. 1988); *McLemore v. Thomasson* (*In re Thomasson*), 60 B.R. 629, 632 (Bankr. M.D. Tenn. 1986); *In re Boca Raton Sanctuary Assoc.*, 105 B.R. 273, 275 (Bankr. E.D. Pa. 1989)).

16.     As the Court is aware, in Chapter 11 cases, courts generally grant substantial deference to a debtor's choice of forum. *See e.g.*, *Enron*, 274 B.R. at 342. However, as this Court is also well aware the same deference should not be given in single-location hospital/healthcare debtors.

17.     For instance, this Court transferred venue of nine Arkansas nursing homes to Arkansas after their initial filing in Delaware. *See In re Highlands of Arkansas*, *et al.*, Lead Case No. 16-11330-LSS, Docket No. 49.

18.     This Court also transferred venue of a Louisiana Health Care Company to Louisiana after its filing and first day hearings in Delaware.   See *In Re LMCHH PCP*, Case No. 17-10201-LSS.

19.     This Court followed the approach of Judge Walsh in the Hawaii Medical Center case ("HMC"). On August 29, 2008, HMC filed Chapter 11 in Delaware. Six days later, on

September 5, 2008, a creditor filed a venue change motion. Several other creditors joined. Three weeks later, on September 19, 2008, Judge Walsh transferred venue to Hawaii. *See In re CHA Hawaii, LLC*, *et al*., Lead Case No. 08-12027-PJW, Docket Nos. 46, 104.

20.    As previously set forth, Courts generally examine six factors in determining when venue should be transferred.   All these factors favor the transferring of venue in this case.

21.    *Asset Location*. Here, the Debtors' operating assets are Parkview Healthcare Center, Skyline Healthcare Center in San Jose, Driftwood Healthcare Center in Hayward, Fruitvale Healthcare Center in Oakland, Pine Ridge Healthcare Center and the management company running these facilities. Each of those nursing homes is in California. Each of the facility's employees are largely in California and Mariner Central also has employees in California.  Mariner Central also is in the business of managing several other California nursing homes. The moving parties consist of claims against 5 of the 20 Mariner family of nursing homes in California (the collective Mariner nursing homes for which there are creditors claims are also referred to herein as "the Mariner Family of nursing homes at issue"). In contrast, the Debtors have no assets in Delaware and no employees in Delaware. This factor supports granting the venue transfer motion.

22.    *Creditor Location*. A review of the Debtors' creditor matrix reveals that most creditors are in California. The Debtors operate Parkview, and the other nursing homes, in California and all their patients are in California. The three main pieces of litigation the Debtors cite to in the Perkins Declaration are occurring in California.   This factor strongly supports transferring venue to California.

23.    *Proximity of the Witnesses*. Again, the main pieces of litigation are occurring in California, including the Debtors attempt to appeal the Ledesma Judgment. If, for instance, the Debtors win a partial appeal, the case would be remanded to the California trial court.   A patient

care ombudsman would need to be in California to monitor patient care.   Further, since Parkview and the other Mariner Family of nursing homes at issue are dealing with patients and their care is paramount, having a local bankruptcy court in the same time zone could prove critical if an emergency arises for Court intervention.

24.     *Proximity to Court*. Geographically, Delaware is on the other side of the Country to California.  It is an approximately a six-hour flight from California, and a drive of approximately 2,9000 miles.   This factor weighs heavily in favor of venue transfer.   Parkview, and the other Mariner Family of nursing homes at issue, has a 3-hour time zone difference with the Court.

25.     *Economic Administration of Estate*. This factor again weighs heavily in favor of venue transfer. It makes no economic sense to have a Delaware court administer and oversee the Bankruptcy of Debtors whose main reason to file is to continue to operate California nursing homes because of a California judgment. Most of the creditors and other interested parties will save on legal fees and travel costs by transferring the cases to California. The Debtors will also benefit from transferring these cases to California as their travel costs to and from Delaware would be eliminated. Additionally, many of the Debtors' employees may be required to participate in these cases.   They generally work and reside in California.  In addition, a transfer of these cases back to California will reduce travel expenses for witnesses such as healthcare consultants, patient and doctor representatives, healthcare ombudsmans, California regulatory officials and the other parties who may be required to testify as to the Debtors' operations and otherwise participate in these cases.

## III.    **NOTICE**

26.     Notice of this Motion is being given to the Debtors, the Office of the United States Trustee for the District of Delaware, and all parties on the 2002 service list.  The Moving Parties

respectfully submit that no further notice of this motion is necessary.

## IV.    <u>CONCLUSION</u>

27.    Venue of the Debtors' bankruptcy cases should be transferred to the USBCND for the convenience of the parties and in the interest of justice. Each factor used to consider whether to transfer venue weighs in favor of a transfer of venue. No factor weighs in favor of maintaining venue in Delaware.  For the foregoing reasons, the Moving Parties respectfully request that the Court enter an order transferring venue of these Chapter 11 Cases to the United States Bankruptcy Court for the Northern District of California, Oakland Division.


Dated: October 5, 2022                          **HOGAN ◆ McDANIEL**

                                                */s/ Daniel K. Hogan*
                                                Daniel K. Hogan (#2814)
                                                Garvan F. McDaniel (#4167)
                                                1311 Delaware Avenue
                                                Wilmington, DE 19806
                                                (302)656-7540; (302) 656-7599 (f)
                                                dkhogan@dkhogan.com
                                                gfmcdaniel@dkhogan.com


                                                *Attorneys for the Moving Parties*