**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MARINER HEALTH CENTRAL, INC., *et al.*,[1] | Case No. 22-10877 |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 25, 2022 at 11:00 a.m. (ET)**<br>**Obj. Deadline: October 18, 2022 at 4:00 p.m. (ET)** |
| | **Re: Docket No. 76** |

**DEBTORS' OBJECTION TO MOTION TO TRANSFER VENUE OF**
**BANKRUPTCY CASES TO BANKRUPTCY COURT FOR**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

---

[1]    The Debtors, along with the last four digits of each Debtors' tax identification number, are: Mariner Health Central, Inc. (6203), Parkview Holding Company GP, LLC (1536), and Parkview Operating Company, LP (7273).  The Debtors' headquarters are located at 3060 Mercer University Drive, Suite 200, Atlanta, GA 30341.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

    A.    General..........................................................................................5

    B.    The Debtor's Bankruptcy Filing. .........................................................7

    A.    The Debtors' Cases are Indisputably Properly Venued in This District Because the Debtors are Each Organized in the State of Delaware. ...................11

    B.    The Debtors' Choice of Forum in Delaware is Entitled to Substantial Weight and Deference, and the Chapter 11 Cases Should remain in Delaware. ....................................................................................11

    C.    The Convenience of the Parties Weighs in Favor of Retaining Venue in Delaware. ....................................................................................16

        i.    The Proximity of Creditors of Every Kind. ................................18

        ii.    The Proximity of the Debtors. ...............................................20

        iii.    Proximity of Witnesses Necessary to the Administration of the Estates. ..........................................................................21

        iv.    The Location of the Assets. ...................................................22

        v.    The Economic Administration of the Estates. ..........................23

        vi.    The Necessity for Ancillary Administration if Liquidation Should Result. ..........................................................................26

    D.    The Interest of Justice is Not Served By Transferring Venue. ............................27

CONCLUSION....................................................................................29

DOCS_DE:241016.1 54622/001

# TABLE OF AUTHORITIES

<u>Cases</u>

*Highlands Arkansas Holdings, LLC, et al.*,
  Case No. 16-11330 (LSS) (Bankr. D. Del 2016) ................................................. 15

*In re Buffest Holdings Inc*.,
  397 B.R. 725 (Bankr. D. Del 2008) ................................................................. 17

*In re Caesars Entm't Op Co*., Inc.,
  2015 WL 495259 (Bankr. D. Del. Dec. 2, 2015) ............................. 10, 20, 23, 27

*In re Commonwealth Oil Refining Co., Inc.*
*(Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc.)*,
  596 F.2d 1239 (5th Cir. 1979) ....................... 12, 17, 20, 21, 22, 23, 26

*In re Enron Corp*.,
  274 B.R. 327 (Bankr. S.D.N.Y. 2002) ........................... 10, 20, 22, 26, 27

*In re Fairfield Puerto Rico, Inc.*,
  333 F. Supp. 1187 (D. Del. 1971) ..................................... 12, 26, 27

*In re Hawaii, LLC* ,
  Case No. 08-12027 (PJW) (Bankr. D. Del. 2008) ............................................ 16

*In re Hechinger Inv. Co. of Delaware Inc.*,
  296 B.R. 323 (Bankr. D. Del. 2003) ............................................................... 17

*In re Industrial Pollution Control, Inc.*,
  137 B.R. 176 (Bankr. W.D. Pa. 1992) ............................................................. 23

*In re Innovative Communication Co., LLC*,
  358 B.R. 120 (Bankr. D. Del. 2006) ........................................................ 11, 17

*In re LMCHH PCP LLC,*
  Case No. 17-10201 (LSS) (Bankr. D. Del 2017) ............................................. 15

*In re Manville Forest Prods. Corp*.,
  896 F.2d 1384 (2d Cir. 1990) .......................................................................... 27

*In re Ocean Properties of Delaware, Inc.*,
  95 B.R. 304 (Bankr. D. Del. 1988) ................................................................. 11

*In re Patriot Coal Corp*.,
  482 B.R. 718 (Bankr. S.D.N.Y. 2012) ............................................................ 22

*In re PWS Holding Corp*.,
  1998 Bankr. LEXIS 549 (D. Del. April 28, 1998) ............................................ 27

*In re Restaurants Acquisition I, LLC*,
   2016 WL 855089 (Bankr. D. Del. Mar. 4, 2016)       10, 11, 12, 17, 18, 20, 22, 26

*In re* S*untech Power Holdings Co., LTD.*,
   520 B.R. 399 (Bankr. S.D.N.Y. 2014)       10, 17

*Intel Corp. v. Broadcom Corp.*,
   167 F. Supp. 2d 692 (D. Del. 2001)       13

*Juul Labs, Inc. v. Daniel Grove*,
   C.A. No. 2020-0005-JTL (Del. Chanc. Ct. August 13, 2020)       13

<u>Statutes</u>

28 U.S.C. § 1408...................................................................................................10, 11, 16

28 U.S.C. § 1412...................................................................................................10

FED. R. BANKR. P. 1014(a)(1)...................................................................................................10

The debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**" or "**Cases**") hereby object ("**Objection**") to the motion to transfer venue of these Chapter 11 Cases to the bankruptcy court for the Northern District of California, Oakland Division (the "**NDCA Bankruptcy Court**" or "**Oakland Court**") [Docket No. 76] (the "**Motion to Transfer**" or "**Motion**"), filed by the Ledesma Plaintiffs and Other Ledesma Plaintiffs (each as defined below, and collectively, "**Movants**").[2] In support of this Objection, the Debtors rely upon the *Declaration of Lawrence Perkins in Support of Debtors' Objection to Motion to Transfer Venue of Bankruptcy Cases to Bankruptcy Court For the Northern District Of California, Oakland Division* (the "**Perkins Declaration**"), filed contemporaneously herewith, and the *Declaration of Lawrence Perkins in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First-Day Declaration**") [Docket No. 12], and respectfully state as follows:

## PRELIMINARY STATEMENT[3]

1.      It is undisputable that venue is proper before this Court, and the Debtors are entitled to substantial deference with respect to their choice of forum.  As Delaware entities, each of the Debtors independently has the right to select Delaware as its chosen forum and they exercised sound business judgment in determining that Delaware was the best forum for these Cases.  Movants, nevertheless, argue that based on the "interest of justice"[4] and "convenience of the parties" the Court should transfer these Chapter 11 Cases to the Oakland Court.  However, Movants fail to meet their high burden to overcome the great deference given to the Debtors' choice of forum, when such forum is proper, as it is here, and when there is a sound business

---

[2]  Movants collectively with the other creditors asserting personal injury related claims and/or employment related claims against one or more the Debtors in litigations outside these Cases are referred to herein as the "Plaintiff Litigants".

[3]  Capitalized terms used but not defined in this Preliminary Statement have the meanings ascribed to such terms below.

[4]  It is disingenuous for the Ledesma Plaintiffs to argue interest of justice in light of the fact that they tried to recover well over $10 million in legal fees from the Debtors while the jury only awarded approximately $3.4 million in compensatory damages and $4.65 million in punitive damages (which will be subject to subordination).  The Motion to Transfer Venue is driven by vendetta rather a concern for "interests of justice" or the convenience of any party other than counsel for the Ledesma Plaintiffs.

reason for selecting that forum, as there is here.  Further, despite Movants' dramatic speculation that venue in this Court will place substantial burdens on employees, creditors, and witnesses, application of the factors that courts review to evaluate the interest of justice and convenience of the parties does not support transferring these Cases to the Oakland Court.

2.      The Debtors chose the Delaware forum for these Chapter 11 Cases for a sound business reason and would be prejudiced if the Cases were transferred to California. Movants have not demonstrated that the Oakland Court would be significantly better suited, if at all, to preside over these Cases.  First, because venue in Delaware is proper for each of the Debtors' cases deference should be afforded to the Debtors' chosen forum and the Cases should remain in Delaware.  Sufficient grounds have not been evidenced by Movants to override preference of the Debtors' selected forum.

3.      Second, this forum is directly related to key issues in these Cases.  The paramount issues in these Cases will involve bankruptcy and Delaware laws -- not California law.  The Ledesma Plaintiffs, and other plaintiffs, have repeatedly asserted that there are alter ego, and similar corporate governance type claims, against the Debtors and certain non-Debtor Affiliates of the Debtors.  Those types of claims are property of the Debtors' estates and this Court will need to make a determination on those issues.  The alter ego type issues will be a key focus in the Cases and involve Delaware law and implicate the "internal affairs" doctrine.  The Court, residing in Delaware, is better suited to adjudicate matters of Delaware corporate law – not a California court.

4.      In contrast, the claims of the personal injury plaintiffs (to the extent not settled) will ultimately be adjudicated and liquidated in whatever forum those litigations presently reside – not before this Court or any other bankruptcy court since bankruptcy courts lack jurisdiction to adjudicate personal injury claims.  Moreover, these Cases do not pertain to an operational restructuring or liquidation that might implicate California laws.

5.      Third, key witnesses for bankruptcy related issues before the Court will include people from Georgia, Maryland, Tennessee, and Texas (as well as from California).

Also, certain books and records related to the Debtors are maintained in Maryland, which may be relevant in these Cases.  Further, the Debtors' chosen lead bankruptcy counsel are located in Delaware and New York and transferring venue to the Oakland Court would not only be inconvenient to such professionals and witnesses but would also result in delays, disruption and additional costs for the Debtors and these estates.

6.      Lastly, as more fully set forth below, there has been sufficient progress in these Cases such that transferring these Cases to a new court would unnecessarily delay these Cases at a substantial cost to the Debtors as a new court, new US Trustee attorney and new professionals would need to get up to speed on the issues of the Chapter 11 Cases.  These Chapter 11 Cases are focused on obtaining a brief breathing spell while the Debtors try to pursue a confirmable plan of reorganization that addresses the looming litigations against them.  However, the Debtors have limited liquidity and are self-funding these Cases.  Moreover, the Debtors already put forth substantial time and effort to allay employee and vendor concerns about the commencement of the Cases.  A venue transfer would likely renew questions and concerns by employees and vendors, requiring more time and attention by the Debtors' management team, and risking distractions that could impact patient services.  The delays related to such transfer may also put the success of these Cases at risk, and, at minimum, Movants have failed to show that no such risk exists.

7.      In contrast, to support the Motion to Transfer, Movants rely on the situs of the Parkview Facility in Hayward, CA as well as on the fact that most employees and creditors are in California, and potential "witnesses" also are in California.  While accurate, these facts are insufficient to satisfy the Movants' burden that is required to support a transfer of these Cases out of Delaware.

8.      First, contrary to arguments made by Movants, these Cases are not single asset real estate cases (the Debtors do not own any real estate) or liquidating single health care

facility cases (the claims against Debtor Mariner Central involve multiple facilities[5] and the Debtors intend to reorganize, not liquidate). Also, while the Debtors take seriously and are mindful of the various personal injury plaintiffs that will have claims in these Cases, these are not mass tort type cases, nor will Section 524(g) type relief be involved. Rather, the Debtors expect that the claims of the personal injury plaintiffs will be adjudicated and liquidated in whatever forum those litigations presently reside (to the extent not settled). So, concerns about costs and convenience for witnesses (related to the personal injury claims) relative to the location of the bankruptcy court are not very relevant, if at all; the merits of the personal injury claims will not be decided by this Court. And, California is *not* significantly more convenient, if at all, for the professionals and potential witnesses that actually may need to appear before the Court on Delaware law and bankruptcy-related matters. The perfunctory laser focus on the location of the Parkview Facility (and employees and creditors who will *not* likely appear before this Court), is not the correct analysis for these Cases that pertain to financial issues due to certain litigations and do not involve an operational restructuring, mass tort, or liquidation. On the flip side, the risks of delays, disruption and increased costs (not decreased costs) that a venue transfer would cause are real and could be detrimental to these estates and all stakeholders.

9.      Further, to be clear, the well-being of the Debtors' residents is paramount. The Debtors promptly worked with the US Trustee and agreed to have a patient care ombudsman, Blanca Castro, appointed in these Cases.[6] The ombudsman will monitor the quality of patient care at the Parkview Facility and represent the interests of the residents at that facility. The Debtors also have been working toward reaching an agreement with the People of the State of California to have a monitor appointed in their other Facilities to assure continued quality of patient care at those locations but have not yet reach an agreement. Accordingly, there is no basis to believe that the quality of patient care will be improved in any way by the change of

---

[5] *See, e.g.,* Exhibit 1 to *Motion of the Debtors for an Order Extending the Automatic Stay, or in the Alternative, Granting Injunctive Relief, to Stay Prosecution of Certain Actions Against Non-Debtor Affiliates*, filed in Adversary Proceeding No. 22-50418 (LSS), Adv. P. Dkt. No. 3 (identifying various Mariner Facilities against which certain creditors have asserted personal injury or employment related claims, in addition to Mariner Central).

[6] *See* Docket No. 112 (Certification of Counsel regarding Appointment of Patient Care Ombudsman).

venue to the Oakland Court.  To the contrary, starting these Cases anew in a new forum with a new judge, new US Trustee attorney and new professionals adds unnecessary risks of delays, costs, and disruptions that may detrimentally impact the Facilities and patient services.

10.    Accordingly, the Court is well qualified and best positioned to handle these Cases, in which issues of Delaware law will be paramount.  Movants have failed to provide sufficient analysis or evidence that these Cases should be transferred to the Oakland Court.  The interests of justice and the convenience of the parties do not support a transfer of venue out of Delaware based on the unique facts of these Cases.  Rather, deference should be given to the Debtors properly chosen forum, and the Motion to Transfer should be denied.

## BACKGROUND

A.    **General.**

11.    The three Debtors are part of the Mariner Health Care group of healthcare services providers, consultants and holding companies, all of which are direct or indirect subsidiaries of non-Debtor Mariner Health Care, Inc. (collectively, the "**Mariner Companies**"). Certain of the Mariner Companies operate 20 skilled nursing facilities (the "**Mariner Facilities**"), with nearly 2,200 licensed beds and approximately 3,100 employees, that provide short-term rehabilitation, comprehensive post-acute skilled care, long-term care, therapy, and other services.  First-Day Decl. ¶ 9.  For more than 30 years, the Mariner Facilities have delivered quality, affordable care to historically underserved persons and communities.  *Id.* Additional information regarding the Debtors' operations, structure, liabilities, and the events leading up to the commencement of these cases is set forth in the First-Day Declaration, which is incorporated herein by reference.

12.    Debtor Parkview Operating Company, LP ("**Parkview**") operates a skilled nursing facility with 121 beds located in Hayward, California (the "**Parkview Facility**"), while Debtor Mariner Health Central, Inc. ("**Mariner Central**") provides administrative, clinical and operational support services to Parkview and to the other Mariner Companies that operate the Mariner Facilities (collectively with Parkview, the "**Operators**").  First-Day Decl. ¶ 11.  Debtor

Parkview Holding Company GP, LLC is the general partner of Parkview and has no other assets and no separate operations.  *Id.*

13.     Each Operator is party to an Administrative, Clinical and Operational Support Agreement (each, a "**Support Agreement**") with Mariner Central, pursuant to which Mariner Central provides each counterparty Operator with various back office administrative, clinical and operational support services.  First-Day Decl. ¶ 14.

14.     Mariner Central provides the Support Agreement services directly or subcontracts with a third party, Fundamental Administrative Services, LLC ("**FAS**"), to provide certain services, such as payroll administration, billing and collections, deposit of funds, and maintenance of billing records, computers, telephone service, and purchasing services.  First-Day Decl. at 6-7; Perkins Decl. ¶¶ 8-9.  For more than a decade, FAS has provided these services to Mariner Central, and FAS is one of the Debtors' Top 30 Creditors.[7]  Accordingly, FAS has a real interest in these Cases, and has certain books and records that may be relevant to bankruptcy-related issues in these Cases.  In fact, the Debtors have relied on FAS to provide certain information needed for their Schedules of Assets and Liabilities and Statements of Financial Affairs ("**Schedules and SOFAs**").  Perkins Decl. ¶ 26.  FAS is located in Maryland.[8]  *Id.*

15.     As described in the First-Day Declaration, the Debtors have been compelled to commence these Chapter 11 Cases because of adverse litigation outcomes in *Ledesma et al. v. Mariner Health Care, Inc.,* et *al.*, Case No. RG19-025110 (the "**Ledesma Action**"), Superior Court of State of California, County of Alameda (the "**Ledesma Court**").[9] This is an action brought by 10 disparate plaintiffs (the "**Ledesma Plaintiffs**") and consolidated into a single case against the Debtors based on widely-varying allegations pertaining to their

---

[7] "**Top 30 List**" refers to the consolidated list of the Debtors' top 30 general unsecured creditors filed with their petitions.  *See, e.g.*, Dkt No. 1, Official Form 204 attached to Petition.  "**Top 30 Creditor**" refers to a creditor identified on the Top 30 List.
[8] Upon information and belief, FAS has over 125 employees but does not employ any individuals within California, does not perform work within California, and does not maintain an office, or bank accounts in California.  Two FAS employees are also employees of the Debtors.
[9] For the record, the excessive attorneys' fees demand of the Ledesma Plaintiffs was a substantial reason for the filing of these cases.

various residencies at the Parkview Facility and seeking a range of compensatory damages, attorney fees, statutory remedies and punitive damages based on widely-varying factual circumstances and liability theories that do not apply equally for all plaintiffs.  First-Day Decl. ¶ 24.  Other pending litigations against one or more of the Debtors include the Integra Action and PSC Action (each as described and defined in the First-Day Declaration) and other actions involving various personal injury and employee related claims.  *Id*. ¶ 28; *See also* Adv. Proc. No. 22-50418 (LSS), Adv. P. Dkt. No. 3 (identifying various Mariner Facilities against which certain creditors have asserted personal injury or employment-related claims, and which also named Mariner Central as a defendant).

B.    **The Debtors' Bankruptcy Filing**.

16.    On September 19, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the Chapter 11 Cases.  The Chapter 11 Cases are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b).  The Debtors are operating as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these cases.

17.    On October 7, 2022, the Office of the United States Trustee ("**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**"), comprised of seven members: (A) six members are Plaintiff Litigants - (i) four personal injury plaintiffs, three of which are Ledesma Plaintiffs, (ii) a former employee of the Debtor (who happens to be a current employee at one of the Debtor's affiliated facilities) asserting primarily a wage and hour type claim, and (iii) Integra Med Analytics, LLC, a plaintiff (a *relator*) with no direct contacts with the Debtors but filed a *qui tam* action principally regarding overbilling therapy services, and (B) one member is a trade vendor.

18.    The Debtors do not have any DIP financing or other third-party lenders in these Cases, but have sufficient cash for critical needs in the short term.  First-Day Decl. ¶ 37. The Debtors intentions for these Cases are to have a brief breathing spell to ensure uninterrupted

operations and care by the Debtors for their residents and to preserve value for the benefit of the Debtors' estates, residents, creditors and other stakeholders while they endeavor to reach resolutions of disputes and seek confirmation of a plan of reorganization in these Chapter 11 Cases that provides a fair result to the collective creditor body and all stakeholders. First-Day Decl. ¶ 8. Since the Petition Date, the Debtors and their advisers have been relentlessly working to satisfy their obligations as debtors in possession, alleviate any patient, employee, and vendor concerns about the commencement of these Cases, reach resolutions with parties where they can, and move these cases forward. To that end, since the Petition Date the Debtors have accomplished the following in these Cases, among other things:

- Obtained relief on a number of "first day motions" critical to stabilizing operations, ensuring uninterrupted resident care and providing a smooth landing into these Chapter 11 Cases;

- On October 4, 2022, the Debtors met telephonically with the representatives of the U.S. Trustee for the initial debtor interview, and have provided the documents and written responses to the U.S. Trustee's information request in connection the initial debtor interview;

- The Debtors filed their Schedules of Assets and Liabilities and Statement of Financial Affairs (Dkt. Nos. 99-105);

- The Debtors have prepared and will soon file a Plan and Disclosure Statement;

- The Debtors filed their applications to retain Raines Feldman LLP, Pachulski Stang Ziehl & Jones LLP, and Katten Muchin Rosenman LLP, all of which have counsel on the east coast. (Dkt. Nos. 60, 67 and 62, respectively). The applications are set for hearing on October 25, 2022;

- The Debtors commenced three adversary proceedings, and filed four motions, respecting various pending litigations, in an effort to obtain certain relief regarding the automatic stay;

- The Debtors have had ongoing discussions with the People of the State of California ("PSC") to try to reach an agreement with respect to the motion to extend the stay (Adv. P. No.22-50420 (LSS), Adv. P. Dkt. No. 3), which is scheduled to be heard on October 25, 2022. The Debtors agreed to extend PSC's time to respond to that motion. The Debtors will continue to work toward a consensual resolution with PSC.

- The Debtors promptly agreed to the appointment of an Ombudsman in these Cases and worked with the US Trustee attorney to seek the appointment of Blanca Castro to serve as Ombudsman (the "**Proposed Ombudsman**");

- The Debtors worked with the US Trustee to schedule, and provide notice of, the 341 meeting for October 26, 2022; and

- The Debtors filed a motion to establish a bar date in these Cases (Dkt. No. 105).

19.     On October 5, 2022, the Ledesma Plaintiffs, and certain other Plaintiff Litigants that are represented by the same attorneys as the Ledesma Plaintiffs (collectively, the "**Other Ledesma Plaintiffs**" or "**Movants**")[10] filed the Motion to Transfer, seeking to have these Cases transferred to the NDCA Bankruptcy Court based on the "interest of justice" and "convenience of the parties".  A hearing on the motion is scheduled for October 25, 2022.  In the Motion to Transfer, Movants generally rely on the facts that the Parkview Facility, and most employees and creditors are located in California, not in Delaware (which the Debtors concede).  Movants also assert that the witnesses necessary for these Cases also are located in California and would be unduly burdened to travel to Delaware (which the Debtors dispute as tort claimants will not need to appear in Bankruptcy Court).  These facts, however, are not dispositive and do not complete the analysis.

20.     The Debtors object to the Motion to Transfer as contrary to the interests of these estates, including in terms of inconvenience, potential disruption to resident care, delay and additional costs to the estates.  Viewed in a vacuum, Movants present discrete generic facts that surfacely appear to support a transfer of venue.  However, as set forth herein, a proper analysis of the interests of justice and convenience of the parties support upholding the Debtors' selected

---

[10]  In addition to the Ledesma Action plaintiffs, the other Movants are: (1) Filimon Arzeta, Jesse Garret, Janet Horrobin, Teresa Meadors and Christine Vassis; (2) Atira Washington, Atara Washington, Donald Johnson Jr., Tia Johnson, Enovy Johnson; (3) Jason Tucker, Casey Tucker, Stephen Tucker; (4) Susan Myung Won, Soon Choi Hyo, Young Jung Hyo and Brian Byung Hwa Chung; (5) Dana Greene-Coward; and (6) Tracy Jackson, Davonte Barfield, Avis Dewalt. Each of these groups represents 1 pending legal proceeding (or in some instances, a notice of potential claim) against the Debtors.  The Ledesma Action plaintiffs are represented by (i) Susan Kang Gordon, (ii) Jennifer Fiore, and (iii) Jody Moore and Gregory Johnson, at their respective firms, and each of the other 5 enumerated groups of Movants are represented on the underlying claims by one, two or all three of these attorneys and firms.  In other words, the Movants are a group of three attorneys seeking to assert claims against the Debtors.

forum before the Court; and, as previously noted, the Motion to Transfer is driven by a vendetta of the counsel for the Ledesma Plaintiffs for some perceived advantage rather than interest of justice or the convenience of the parties.

## DISCUSSION

21.     Movants have not overcome their high burden for the Court to disregard the presumption in favor of the Debtors' properly selected forum, and the Motion to Transfer should be denied for the reasons stated herein.

22.     Venue is proper for a bankruptcy case in any judicial district where (i) the debtor's "domicile, residence, principal place of business . . . or principal assets" have been located for a "longer portion of" the 180 days prior to the petition date; or (ii) the bankruptcy case of an affiliate is pending. 28 U.S.C. § 1408.  Even when venue is proper, the court *may* transfer venue to another district if the court determines that the transfer is "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; *see also* FED. R. BANKR. P. 1014(a)(1).  The moving party bears the burden of showing by a preponderance of the evidence that either the interests of justice or the convenience of the parties would be better served by a transfer of the case.  *In re Restaurants Acquisition I, LLC*, 2016 WL 855089, at *2 (Bankr. D. Del. Mar. 4, 2016).  While the decision to transfer venue lies within the sound discretion of the court based on the analysis of the specific facts of the case, substantial weight and deference is afforded to a debtor's choice of forum and should not be disrupted lightly.  *See, e.g.*, *In re Restaurants Acquisition I, LLC*, 2016 WL 855089, at *6 (Bankr. D. Del. Mar. 4, 2016); *In re Caesars Entm't Op Co*., Inc., 2015 WL 495259, at *7 (Bankr. D. Del. Dec. 2, 2015); *In re Enron Corp*., 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002).  Further, "[w]here a transfer would merely shift the inconvenience from one party to another, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed." *In re Enron Corp*., 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002); *see also In re* S*untech Power Holdings Co., LTD.*, 520 B.R. 399, 420 (Bankr. S.D.N.Y. 2014).  Here, the Movants have

not met their burden.  Accordingly, the Debtors' choice of forum should be honored and the

Motion to Transfer denied.

**A.      The Debtors' Cases are Indisputably Properly Venued in This District
        Because the Debtors are Each Organized in the State of Delaware.**

        23.      Each Debtor was formed under the laws of the State of Delaware.  First-

Day Decl. at ¶ 9.  Parkview is a Delaware limited partnership, and Parkview Holdco is a

Delaware limited liability company.  Both were formed in 2014.  Mariner Central is a Delaware

Corporation formed in 2002.  Perkins Decl. at ¶ 12.  Consequently, venue of each of these cases

is independently proper in Delaware as a matter of law under 28 U.S.C. § 1408.[11]  *See, e.g., In re*

*Restaurants Acquisition I, LLC*, 2016 WL 855089, at *6 (Bankr. D. Del. Mar. 4, 2016)

("Because the Debtor is organized under the laws of Delaware, this forum is proper under the

statute."); *In re Innovative Communication Co., LLC*, 358 B.R. 120, 125 (Bankr. D. Del. 2006)

("Venue is appropriate in the state of incorporation, 28 U.S.C. § 1408(1), so venue is proper in

Delaware with respect to the corporate Debtors.").  Movants do not, and cannot, challenge this

point.

**B.      The Debtors' Choice of Forum in Delaware is Entitled to Substantial Weight and
        Deference, and the Chapter 11 Cases Should remain in Delaware.**

        24.      Because venue in this District is legally proper, the Debtors' choice of this

forum is entitled to great weight and deference.  *See, e.g., Restaurants Acquisition I, LLC*, 2016

WL 855089, at *7 (Bankr. D. Del. Mar. 4, 2016) ("movant bears the burden of demonstrating

that the factors strongly weigh in favor of a transfer as courts will generally grant substantial

deference to a debtor's choice of forum"); *In re Ocean Properties of Delaware, Inc.*, 95 B.R.

304, 305 (Bankr. D. Del. 1988) (same).  Therefore, the Court, in considering the Motion to

Transfer, "should exercise its power to transfer cautiously, and [Movants] must show by a

preponderance of the evidence that [these Cases] should be transferred." *See  In re*

*Commonwealth Oil Refining Co., Inc. (Commonwealth of Puerto Rico v. Commonwealth Oil*

---

[11] Also, once one Debtor filed in Delaware, venue in Delaware was proper for the other two Debtors.  *See* 28 U.S.C.
§ 1408(2).

*Refining Co., Inc.)*, 596 F.2d 1239, 1241 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045 (1980)

("***CORCO***") (internal citations omitted); *accord In re Fairfield Puerto Rico, Inc.*, 333 F. Supp.

1187, 1989 (D. Del. 1971) ("This Court should not freely abandon to any other district its duty to

determine a matter clearly within its jurisdiction."); *In re Restaurants Acquisition I, LLC*, 2016

WL 855089, at *4 (Bankr. D. Del. Mar. 4, 2016) (despite substantially all assets being located in

state of proposed new forum and none being located in Delaware, court denied motion for venue

transfer when movant failed to demonstrate by preponderance of evidence that factors weighed

in favor of transfer).

25.     Here, the Debtors duly considered the venue options available to them,

and exercised their sound business judgment to select the Delaware venue.  Perkins Decl. ¶ 29.

Alternative statutorily proper venues considered were California (where Parkview assets are

located) and Georgia (where headquarters are located).[12]  *Id.*  First, the Court has the track record

and ability to facilitate an expeditious reorganization process, which is needed here.  These

Chapter 11 Cases are focused on obtaining a brief breathing spell while the Debtors try to pursue

a confirmable plan of reorganization that benefits its estates and creditors collectively, while

addressing the looming litigations against them.  The Debtors, however, have tight liquidity and

are self-funding these Cases.  First-Day Decl. ¶ 37; Perkins Decl. ¶ 30.  The Debtors cannot

afford to capitulate to the whim of counsel for the Ledesma Plaintiffs whose scorched earth

litigation tactics led to in excess of approximately $10 million in legal fees on a recovery of

approximately $3.4 million in compensatory damages.  Prepetition, the Debtors generally had

positive cash flow, but they own no real estate, have limited terms remaining on their leases, and

do not have any other substantial assets, other than cash; making third-party funding

challenging.[13] First-Day Decl. ¶¶ 22, 36.  While the Debtors have sufficient funds for imminent

---

[12]  Maryland also may be a statutorily proper forum for Mariner Central since its main assets are cash and accounts receivable, and the Debtors' bank accounts are virtual and managed from Maryland and the Debtors' financial books and records are in Maryland.

[13]   The various pending litigations and additional restructuring expenses have had a substantial negative impact on the Debtors' cash flow.  *See* Dkt. No. 66, Notice of Filing of Disaggregated and Updated Budgets.

necessary expenses, their cash is limited, and these Cases cannot drag along.[14]  To that end, the Debtors have been making strides to move these Cases forward expeditiously as discussed below.  The Court also has the experience and has demonstrated a willingness and ability to accommodate hearings and dispose of matters in an efficient and timely fashion.  There is no assurance that the Oakland Court will be able to do likewise.  The Debtors believe the Delaware forum is the best forum for a successful restructuring and ultimately to protect resident care.

26.    Second, and quite materially, key issues in these Cases will be governed by Delaware law, and a Delaware court is best suited to rule on issues of Delaware law.  The Ledesma Plaintiffs (and other creditors) have repeatedly alleged that there are alter ego, and similar corporate governance type claims, against the Debtors and certain non-Debtor Affiliates of the Debtors.  Those types of claims are property of the Debtors' estates and this Court will need to make a determination on those types of issues.[15]  The issues involved in these Cases will rely on Delaware law and implicate the "internal affairs" doctrine.  The "internal affairs" doctrine dictates that internal affairs of a corporation (*e.g.*, matters peculiar to the relationship among or between the corporation and its current shareholders, officers, and directors) should be governed by the corporate statutes and case law of the state in which the corporation is incorporated.  *See Juul Labs, Inc. v. Daniel Grove*, C.A. No. 2020-0005-JTL (Del. Chanc. Ct. August 13, 2020) (discussing "internal affairs" doctrine history and policy).  Further, "Delaware has an interest in protecting the rights of its citizens," and correspondingly, change of venue can only be granted upon a strong showing of equities favoring the transfer.  *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001).  Here, each Debtor was organized under Delaware laws.  In fact, all the Mariner Entities were organized under Delaware laws.  Notably, the Ledesma Court residing in California already found that it lacked jurisdiction over certain of the Debtors' parent and/or affiliate entities (*i.e.*, Mariner Health Care Management Company, Mariner Health Care, Inc. MHC West Holding Company, National Senior Care, Inc., and GC Holding Company 2

---

[14]  *See* Dkt. No. 66, Notice of Filing of Disaggregated and Updated Budgets.
[15]  The Debtors reserve their right to fully brief any issues pertaining to such claims being property of their estates at the appropriate time.

LLC) because they lacked the requisite minimum contacts with California. Ledesma. Perkins Decl. ¶ 10. Certainly, Delaware laws will apply to any alter ego, and similar corporate governance, claims. The Court, residing in Delaware, is best suited to adjudicate matters of Delaware corporate law, which will be pivotal in these Cases -- not a court in California.

27. Third, key parties and witnesses for pertinent bankruptcy issues (such as Schedules, SOFAs, determining estate assets, e.g., alter ego claims, etc.) will include people located in Georgia, Maryland, Tennessee, and Texas (as well as from California). For example, FAS, the entity that supports Mariner Central's administrative support of the Facilities, is located in Maryland and its books and records are located in Maryland (and also stored electronically). FAS has over 125 employees, some of whom assist with the back-office administration of the Mariner Facilities (including payroll and treasury functions), and some of whom may be witnesses in these Cases, if needed. The Debtors' CRO, Mr. Perkins, resides in Nashville, Tennessee. Delaware is substantially more convenient than Oakland, CA for Mr. Perkins. Perkins Decl. ¶ 13. The Debtors chosen counsels also are in Delaware and New York. In addition, as further discussed below, the Debtors expect that the personal injury plaintiffs will not have to appear individually in person before the Court (or any bankruptcy court). The merits of those underlying claims will be adjudicated by courts other than the Court due to a bankruptcy court's lack of jurisdiction to liquidate personal injury claims.

28. These are all valid business reasons for the Debtors selection of the Delaware forum and should not be disregarded. Additionally, these Cases are not similar to cases in which entities were newly formed in a jurisdiction to bootstrap venue for themselves or affiliates. Each of the Debtors has been in existence for years, and each has an independent tie to Delaware. The Debtors should be afforded all the accompanying rights and privileges of being Delaware entities, including having a Delaware court preside over these Cases, which will present Delaware issues of law.

29. Nevertheless, Movants argue that the Debtors' selected forum should be accorded less deference as a single-location healthcare case and they principally rely on three

14

cases for support of their proposition.  Motion ¶¶ 11, 16-19.  The cases cited by Movants are considerably distinguishable.

30.     The *Highlands Arkansas Holdings* case involved a chapter 7 liquidation of several long-term care facilities located in Arkansas, and the primary arguments of the motion to transfer venue in that case was that the Chapter 7 trustee responsible for the administration of the liquidation should be within the district of the assets and former personnel of the Debtor in order to fulfill his statutory duties and to be accessible to them.[16]  See *Highlands Arkansas Holdings, LLC, et al.*, Case No. 16-11330 (LSS) (Bankr. D. Del 2016), *Highlands* Dkt. Nos. 15 and 39.  It also was anticipated that key matters in the chapter 7 case would involve Arkansas law and potential material avoidance actions that would involve Arkansas defendants.  *Id.*  Moreover, the chapter 7 trustee had only recently become involved with the cases and there was little, to any, learning curve for a new chapter 7 trustee to take over.  *Id.*  Also, unlike the Cases before the Court, there was no reason articulated why Delaware was the selected venue other than being the location of the corporate formation.  *Id.*

31.     Similarly, *In re LMCHH PCP LLC* involved a single debtor chapter 11 winddown, closure and potential liquidation of an acute-care hospital located in Louisiana.  See *In re LMCHH PCP LLC,* Case No. 17-10201 (LSS) (Bankr. D. Del 2017), *LMCHH* Dkt. No. 27, ¶¶ 4-6.  A trade creditor filed a motion to transfer venue from Delaware to Louisiana.  *Id.*  Seemingly *all* assets, books and records, employees, and trade creditors who would likely face rejection motions, among other things, were located in Louisiana.  *Id.*  The creditors' committee supported the motion, and significantly, the Debtor consented to the transfer of venue.[17]  In fact, no business rationale was provided for filing the case in Delaware other than venue was proper and the debtor believed the Delaware Court could as easily liquidate the real estate and other assets as another court.  *Id.*

---

[16] *See Highlands Arkansas Holdings, LLC, et al.*, Case No. 16-11330 (LSS), *Highlands* Dkt. No. 15 (motion seeking to transfer venue from Delaware to Arkansas), ¶¶ 15-16, 22 and *Highlands* Dkt. No 39 (reply in support of motion to transfer venue), ¶¶ 9, 19-20.

[17] See *In re LMCHH PCP LLC*, Case No. 17-10201 (LSS), *LMCHH* Dkt. Nos. 98 and 100.

32.     In *In re Hawaii, LLC*, the Delaware court granted a motion to transfer the cases to Hawaii.  See *In re Hawaii, LLC* ,Case No. 08-12027 (PJW) (Bankr. D. Del. 2008), *Hawaii* Dkt. No. 104.  That case involved four debtors operating hospitals in Hawaii, one of which was the sole organ transplant facility in Hawaii.  The debtors in *In re Hawaii* had substantial operational and debt issues, which they sought to restructure through the bankruptcy cases.  *Id.*, *Hawaii* Dkt. 3, First-Day Declaration, at 8-11.  Concerns on venue focused on the significant six-hour time difference if emergencies arose, the highly critical services the debtors provided to the State of Hawaii, the expense of travel, and that the assets, books and records, and creditors generally were located in Hawaii.  Notably, only one debtor (a holding company) had a direct nexus to Delaware as its state of organization – the other three debtors were each formed under laws of Hawaii and relied on 28 U.S.C. § 1408(b) for venue in Delaware.  Other than the fact that venue was proper, the debtors' rationale for selecting Delaware in those cases focused on the need for defined laws and procedures for the immediate use of cash collateral. *Id*., *Hawaii* Dkt. 78 (objection to motion to transfer), ¶¶ 16-17.  Once that relief was obtained, there appeared to be no Delaware-centric issues involved in those cases.  *Id*.

33.     None of those cases were expected to involve issues of Delaware law, and each of them were either seeking an operational restructuring or liquidation that would involve issues of law of the forum state to which the cases were being transferred.  Those cases also did not have the other reasons of these Debtors, as set forth above and herein.

34.     Accordingly, the Debtors choice of forum before the Court was proper and is based on a valid business purpose and the Debtors' sound business judgment.  Under the circumstances here, to warrant abandoning the Debtors' chosen forum, Movants must meet a high burden to overcome a strong deference to the Delaware forum, which, as discussed below, they have failed to do.

**C.      The Convenience of the Parties Weighs in Favor of Retaining Venue in Delaware.**

35.     The Motion to Transfer fails to demonstrate that the "convenience of the parties" would be substantially better served by transferring these Cases to the Oakland Court.

16

In fact, Delaware is the more convenient forum, and certainly not a less convenient forum, for the parties. When evaluating whether a transfer of venue would serve the "convenience of the parties," courts generally analyze the following six factors to help guide their discretion:

    i.      the proximity of creditors of every kind to the court;

    ii.     the proximity of the debtor to the court;

    iii.    the proximity of the witnesses necessary to the administration of the estate;

    iv.    the location of the debtor's assets;

    v.     the economic administration of the estate; and

    vi.    the necessity for ancillary administration if liquidation should result.

*See*, *e.g.*, *CORCO*, 596 F.2d at 1247; *In re Restaurants Acquisition I, LLC*, 2016 WL 855089, at *7 (Bankr. D. Del. Mar. 4, 2016) (applying *CORCO* factors); *In re Innovative Communication Co., LLC*, 358 B.R. 120, 125 (Bankr. D. Del. 2006) (citing *CORCO* factors and other private and public interests that may be relevant). If a transfer would merely shift the inconvenience from one party to another, the debtor's chosen forum should not be disturbed. *See In re Suntech Power Holdings Co., LTD.*, 520 B.R. 399, 420 (Bankr. S.D.N.Y. 2014). Movants bear the burden of establishing that the six factors *strongly* weigh in favor of a transfer of these Cases to California. *See Restaurants Acquisition I, LLC*, 2016 WL 855089, at *7 (Bankr. D. Del. Mar. 4, 2016) (applying *CORCO* factors); *see also In re Buffest Holdings Inc.*, 397 B.R. 725, 727 (Bankr. D. Del 2008) ("The moving party must demonstrate by a preponderance of the evidence that transfer of venue is warranted); *In re Hechinger Inv. Co. of Delaware Inc.*, 296 B.R. 323, 324 (Bankr. D. Del. 2003) ("The decision of whether venue should be transferred lies within the

sound discretion of the Court, though the moving party must demonstrate by a preponderance of the evidence that such change is warranted.).  Movants have failed to meet that burden.

### i.    *The Proximity of Creditors of Every Kind.*

36.    Although most of the Debtors' creditors are located in California, including the Plaintiff Litigants, approximately 40% of the creditors on the Debtors' Top 30 List reside outside of California, including in New York, Maryland, Pennsylvania, Georgia, Texas, Minnesota, Massachusetts, Kentucky, Colorado and North Dakota.  *See, e.g.*, Dkt No. 1, Official Form 204 attached to Petition.  This percentage is not insignificant, especially in light of the Movants' heightened burden.  *See In re Restaurants Acquisition I, LLC*, 2016 WL 855089, at *6 (Bankr. D. Del. Mar. 4, 2016).

37.    Moreover, these non-California creditors are trade vendors of the Debtors, which are under-represented on the Creditors' Committee and critical to the Debtors' ongoing operations.  The trade vendors while comprising the majority in number of Top 30 Creditors, have only one of the seven members representing trade vendors on the Creditors' Committee.[18] Such under-representation may require trade creditors to take a more active individual role in these Cases compared to Plaintiff Litigants which are represented by six of the seven committee members, which hold disputed litigation claims.  There would be no benefit (or convenience) to these key trade Top 30 Creditors to have these Cases transferred to California.

38.    Further, the Debtors expect that the Movants and other personal injury plaintiffs will not have to appear individually in person before the Court.  The Ledesma Plaintiffs already hold a judgment, and their case is at the appellate level, which will not require testimony. The merits of the other personal injury claims will be liquidated by a court other than a bankruptcy court due to the bankruptcy court's lack of jurisdiction to liquidate such claims. There should be no need for any of the Ledesma Plaintiffs or Other Ledesma Plaintiffs, in

---

[18] While the Plaintiff Litigants have a majority in dollar amount of Top 30 Creditor claims, those claims are contingent or disputed (and subject to partial subordination), compared to the trade vendor claims, which generally are neither contingent nor disputed.

particular those in "fragile" condition (Motion ¶ 4) to travel and appear in person before any bankruptcy court, whether in California or Delaware.  Nevertheless, in special situations courts in this District generally are amenable to stakeholders participation in hearings by telephone, as the Court has done in numerous other cases.  Therefore, Movants' arguments that rely on venue of these Cases in Oakland, CA being more convenient to accommodate in-person appearances by the individual plaintiffs are not material (and, at most, should be afforded nominal weight in the venue analysis).

39.    Practically, creditors will appear, if and as needed, in these Cases through their bankruptcy counsel.  Notably, the Movants (Ledesma Plaintiffs and Other Ledesma Plaintiffs) already have retained bankruptcy counsel in Delaware – Messrs. Hogan and McDaniel of the Hogan McDaniel firm.  Also, creditor Integra Med Analytics, LLC (another Top 30 Creditor and member of the Creditors' Committee) is located in Texas[19] and its lead counsel, Jeremy H. Wells of Reid Collins & Tsai LLP, is also located in Texas, not California.[20]  Likely, most counsel to the Plaintiff Litigants will require additional counsel with bankruptcy expertise regardless of whether these Cases are in California or Delaware.  And, the Creditors' Committee has already selected Delaware bankruptcy counsel, and will have bankruptcy counsel whether in Delaware or California.  Therefore, it is not apparent from the Motion to Transfer that the Oakland Court would be substantially more convenient for these professionals who are likely to be the parties active in these Cases and appearing before the Court.  Notably, while the non-Delaware professionals of the Movants may be inconvenienced coming to Delaware, the Debtors' professionals would be inconvenienced going to Oakland, CA, and would have to appear in court substantially more often than individual creditors' counsel.  Swapping one party's inconvenience for another does not satisfy Movants' burden to prove the new venue is substantially more convenient for the parties.

---

[19] *See* Complaint filed by Integra, (¶¶ 11-12), a copy of which attached as exhibit B to the Declaration of Kristy Owen filed in Adv. Proc. No. 22-50419 (LSS), Adv. P. Dkt. No. 4 ("Relator Integra Med Analytics LLC is a Texas limited liability company with its principal place of business in Austin, Texas.
[20] According to its website, Reid Collins & Tsai LLP also has offices in New York, Washington D.C. and Wilmington, Delaware.  *See* www.reidcollins.com.

40.     Accordingly, Movants have failed to establish that transfer of venue would substantially improve the convenience of the creditor body as a whole, and therefore this factor supports denial of the Motion to Transfer.

### ii.     *The Proximity of the Debtors.*

41.     Consideration of the "proximity of the Debtors" to the Court does not favor transfer.  A cursory analysis that simply identifies the Parkview Facility as located in California and the Court as located in Delaware, does not complete the analysis.  The appropriate focus of the "proximity of the debtor" inquiry is on the location of the debtor parties that must appear in the bankruptcy court. *See In re Restaurants Acquisition I, LLC*, 2016 WL 855089, at *8 (Bankr. D. Del. Mar. 4, 2016) (*citing* CORCO, 596 F.2d at 1248 ("The concern is with the corporation's employees who must appear in court, not with the employees who are on the production line."); *Enron*, 274 B.R. 327, 347 (Bankr. S.D.N.Y. 2002) ("the certain participants in the proceedings before this Court will be the professionals retained in these cases."); *Caesars Entm't Op Co*., Inc., 2015 WL 495259, at *5 (Bankr. D. Del. Dec. 2, 2015) ("In the CORCO convenience analysis, courts often focus more closely on the location of the debtors' and creditors' professionals.")).

42.     Mr. Perkins, the Chief Restructuring Officer of the Debtors, resides and works in Nashville, Tennessee, subject to frequent business travel, including to Delaware. Perkins Decl. ¶ 13.  In fact, Mr. Perkins currently has other engagements pending before courts in Delaware.  Delaware is substantially more convenient than Oakland, CA to Mr. Perkins, who will be an active representative of the Debtors before the Court.  Perkins Decl. ¶ 13.  Other Debtor parties that may appear in the bankruptcy Cases are employees located in Georgia (Devin Ehrlich), Maryland (Kenneth Tabler), and Texas (Kristy Owen), as well as in California.  *Id.* The Debtors' headquarters historically have been, and continue to be, located in Georgia.  *Id.*  The Debtors' chosen lead bankruptcy counsel are located in New York (Raines Feldman LLP) and Delaware (Pachulski Stang Ziehl & Jones LLP), and the counsel for the independent director and independent manager of the Debtors, as applicable, is located in New York (Katten Muchin

20

Rosenman LLP).[21]  While other employees of the Debtors may be involved in personal injury

lawsuits pending in non-bankruptcy forums (to the extent such lawsuits are not stayed), it is

highly unlikely that physician and clinical type employees would ever be involved in bankruptcy

issues that would require them to appear before the Court.  Therefore, Movants are unable to

demonstrate that venue in Oakland, CA would substantially improve the convenience of the

Debtors, and this factor weighs against transfer of venue.

> ### *iii.    Proximity of Witnesses Necessary to the Administration of the Estates.*

43.    Similar to the prior factor, the third factor, the "proximity of witnesses

necessary to the administration of the estates" weighs against transfer of venue.  Movants fail to

distinguish between witnesses that may be needed (at some point) in personal injury lawsuits for

trial testimony (as an example) in non-bankruptcy forums, and witnesses necessary to administer

these estates.  This *CORCO* factor pertains to the latter, and the witnesses necessary to the

administration of the Debtors' estates are located on the east coast in Georgia and Maryland as

well as in Texas, Tennessee, and California.  Accordingly, venue in Oakland, CA would not

substantially improve the convenience of witnesses as a whole.

44.    For example, the transcript excerpts of certain deposition testimony

attached to the *Declaration of Susan Kang Gordon* ("**Gordon Decl**.") filed in support of the

Motion to Transfer, contain testimony from three more senior employees of the Debtors: one

who resides in Georgia; one who resides in Texas; and only one who resides in California.

Further, FAS, one of the Debtors' Top 30 Creditors and provider of substantial administrative

support services to the Debtors pursuant to an Administrative Support Agreement with Mariner

Central, is located in Maryland and has certain books and records related to the Debtors that may

be relevant to Delaware law and bankruptcy-related issues in these cases.  FAS also has provided

certain information to the Debtors for their Schedules and SOFAs, and will continue to provide,

as needed, administrative back-office support relevant to, and throughout, these Cases.

---

[21]  While these firms have other offices in the United States, the attorneys primarily responsible for matters related to these Cases are located at the office locations noted herein.

Moreover, in this post-COVID era, the Court can accommodate those who need to attend remotely in special situations, so the purported benefits to change venue is minimized.

45.    Therefore, Movants have not demonstrated that the relevant witnesses would be substantially more convenienced, if at all, with venue in Oakland, CA.  This factor does not support transferring venue.

### iv.    The Location of the Assets.

46.    Parkview's main asset is the operation of the Parkview Facility, which is located in Hayward, California.  Parkview does not own real property, it leases the premises for the Parkview Facility and the principle representative of the landlord is based in Massachusetts.  Perkins Decl.  Mariner Central's main assets are its cash and accounts receivable, which are located in Maryland.  The Debtors' financial books and records are located in Maryland.  They manage their bank accounts from Maryland, and maintain accounts and interact with bankers at Capital One located in Melville, New York and Bank of America located in McLean, Virginia.  Perkins Decl. ¶ 13, 26.  Regardless, courts have noted that "where the ultimate goal is rehabilitation rather than liquidation" the location of a company's assets is not as crucial to the analysis.  *In re Restaurants Acquisition I, LLC*, 2016 WL 855089, at *9 (Bankr. D. Del. Mar. 4, 2016) (*citing Enron*, 274 B.R. at 347 (*citing CORCO*, 596 F.2d at 1248)); *accord In re Patriot Coal Corp.*, 482 B.R. 718, 753-54 (Bankr. S.D.N.Y. 2012).

47.    Although the Parkview Facility is located in California, because (a) the Debtors are seeking to reorganize rather than liquidate, and (b) the Debtors are not undertaking an operational restructuring but rather merely addressing financial difficulties caused by certain litigations, the location of the Facility does not weigh heavily into the analysis.  There is no explanation of how the location of the asset itself truly impacts these Cases, and it is unclear what real benefit the proximity of the court to the Debtors' tangible assets provides in these Cases.  The key witnesses needed for bankruptcy issues are likely not located at the Mariner Facilities.  Also, pleadings filed with the Court are generally done electronically, not in person.

Regardless, the location of the Facility is merely one factor for this Court to consider, but it is not determinative of venue, and is of nominal weight under the circumstances of these Cases.

48.     Moreover, unlike genuine single facility cases, Movants acknowledge that there are creditors of one or more of these estates that have no connection to the Parkview Facility, but rather have claims involving litigations concerning other Mariner Facilities throughout California.  Motion at ¶4.  Therefore, unlike single facility cases, transferring the Cases to Oakland California will not provide any "local court" knowledge or support "local interest" or substantially improve convenience to creditors with claims related to, for example, the Palm Springs Facility in Palm Springs (located more than 470 miles from Oakland; the Village Square Facility in San Diego (located more than 460 miles from Oakland), or the Santa Monica Facility in Santa Monica (located more than 370 miles from Oakland); each of which would take more than six hours to drive to Oakland or the inconvenience of air travel. Transferring venue to Oakland, CA will not substantially benefit the parties involved with those other Facilities.

49.     These Cases simply are not a single real estate or typical single facility type cases, and the Movants have not demonstrated that transferring these Cases to the Oakland Court to be near the Parkview Facility would in realty further the convenience of the parties or provide a substantial "local" benefit to these Cases.

     *v.*     ***The Economic Administration of the Estates.***

50.     The economic and efficient administration of the estates is the most important factor when considering a motion to transfer venue.  *CORCO*, 596 F.2d at 1247; *In re Caesars Entm't Op Co*., Inc., 2015 WL 495259, at *6 (Bankr. D. Del. Dec. 2, 2015); *In re Industrial Pollution Control, Inc.*, 137 B.R. 176, 182 (Bankr. W.D. Pa. 1992).  Movants' arguments on this point generally focus on potential travel costs that could be reduced for creditors, potential healthcare related witnesses, and the Debtors, if the Cases were transferred to Oakland, CA, and they assert that "[it] makes no economic sense" to have a Delaware bankruptcy court preside over debtors whose business is in California and involve a California

judgment.  Motion ¶ 25.  That analysis, however, is insufficient and flawed, and does not satisfy the Movants burden to demonstrate that the economic administration of the estates would be substantially improved if these cases were transferred to California.

51.    A key part of this economic analysis is the fact that the Debtors' lead bankruptcy counsel are local on the east coast in Delaware and New York.  Further, while the law firms involved have an office in California, the attorneys primarily responsible for matters related to these Cases are located in New York and Delaware and new attorneys would need to come up to speed on the Debtors, these Cases, and the multitude of issues involved; or, would require substantial travel (and expense) by east coast bankruptcy professionals.  Moreover, Oakland is far from being significantly more convenient for attorneys located in Los Angeles or Orange County, California, which would be at least a six-hour drive or involved air travel.  The Debtors would need to engage new or additional counsel that would need to come up a steep learning curve quickly if these Cases are transferred from Delaware, at a substantial cost of time and money; both of which are precious here.

52.    Further, it is expected that these Cases will not involve any novel issues of California law.  Rather, these Cases involve issues of Delaware law and the Court's application of Delaware law will be a critical aspect of these Cases.  While there are litigation-based claims, these Cases do not involve complicated mass tort type liabilities and the Debtors expect to proceed through the reorganization process expeditiously.  In light of the projected short-term nature of these Cases, requiring another Court to get up to speed and to ultimately have to determine Delaware law, does not advance the economic administration of these Cases.  The parties also cannot be sure how quickly a new judge could accomplish that, or the availability on his/her calendar.  Any unnecessary delays caused by the transfer could substantially risk the Debtors' reorganization prospects – and ultimately could impact patient care.  Indeed, retaining venue in Delaware with the Court that has already obtained initial familiarity with the Debtors and key parties furthers the economic administration of these Cases.

53.     Moreover, as noted above, Movants are conflating witnesses that may be needed for bankruptcy-related issues heard before the Court to administer these Chapter 11 Cases, with witnesses that may be needed for trials concerning personal injury-based claims, which generally cannot be adjudicated by the Court (or any other bankruptcy court).  With respect to the latter type witnesses, which appears to be Movants' focus, there is no genuine basis to believe that they will personally appear before the bankruptcy court, whether in Delaware or California.  In the highly unlikely event that such appearance is needed, the Court can make special accommodations for them to appear virtually.  And, as set forth above, any witnesses expected to appears on behalf of the Debtors respecting the administration of the Chapter 11 Cases would <u>not</u> be more convenienced by a transfer of these Cases to Oakland, CA.  *See supra*, 44-50.  In addition, a Long Term Care Ombudsman for the State of California has been appointed and will be in California and available to be on site to oversee the Parkview Facility and carry out her duties.  It would be rarely the case that she will need to appear in person (rather than through her bankruptcy counsel) before the bankruptcy court, and all reports would be filed electronically.  And if an emergency arises, the Court could accommodate a virtual hearing, if needed.

54.     Further, the Debtors' trade creditors are geographically dispersed and if for some reason they were required to appear in these Cases in person (as Movants appear to argue), a material number of them would need to travel regardless of whether the proceedings were to take place in Delaware or California.  *See Supra* 39-42.  Movants have not demonstrated how transferring these Cases to California would substantially improve the economic administration of these Cases vis-à-vis trade creditors.

55.     Lastly, as set forth above, there has been sufficient progress in these Cases such that transferring these Cases to a new court would unnecessarily delay these Cases at a substantial cost to the Debtors as a new court, new US Trustee attorney and new professionals would need to get up to speed on the issues of the Chapter 11 Cases.  The Court also has spent time and effort familiarizing itself with the Debtors' businesses, corporate and capital structure

as evidenced by the Court's various questions to Debtors' counsel at the first-day hearings on September 19, 2022.  The US Trustee's office (DE) has already conducted the initial debtor interview and obtained documentary responses in connection with his questions related thereto. The US Trustee also has selected and appointed the Patient Care Ombudsman.  Adversary proceedings have been commenced, motions (including a motion to set a bar date), Schedules, and SOFAs have all been filed, 341 meeting notices have been mailed, and a disclosure statement and plan are expected to be filed this week.  A transfer of venue would cost time and money that would detrimentally impact the administration of these Cases.

56.     In sum, despite the location of the Parkview Facility, most employees, and ancillary litigations being located in California, there is simply nothing that would be substantially more convenient or improve the economic administration of the Cases by a transfer of these Cases to the Oakland Court based on the unique facts of these Cases.  *In re Restaurants Acquisition I, LLC*, 2016 WL 855089, at *3 (Bankr. D. Del. Mar. 4, 2016) (denying transfer even though substantially all employees of Debtor resided in movant's proposed forum Texas, not Delaware).  Such venue transfer, however, would cause undue delay, disruption, additional costs to the estates, and materially inconvenience the Debtors, their chosen bankruptcy counsel and potentially witnesses material to these Cases.

### vi.     *The Necessity for Ancillary Administration if Liquidation Should Result.*

57.     The final factor relates to the necessity for ancillary administration if liquidation should result.  However, as the courts in *CORCO* and *Fairfield Puerto Rico* recognized, "anticipation of the failure of the [Chapter 11] proceeding is an illogical basis upon which to predicate a transfer."  *CORCO*, 596 F.2d at 1248; *see also In re Enron Corp.*, 274 B.R. 327, 349 (Bankr. S.D.N.Y. 2002); *In re Fairfield Puerto Rico, Inc.*, 333 F. Supp. at 1191. Indeed, "[t]his factor is often discounted by courts."  *Enron*, 274 B.R. at 343, n. 11.  The Debtors' reorganization strategy does not contemplate liquidation.  The Debtors' focus in these Cases is to propose a plan that will maximize value for all constituents, and Movants offer no factual or legal basis for this Court to contemplate the failure of the Debtors' Chapter 11 Cases.

*See In re Fairfield Puerto Rico, Inc.*, 333 F. Supp. at 1191.  This factor does not support whatsoever a transfer of venue.

58.    Accordingly, Movants have failed to demonstrate that the balance of convenience weighs strongly, if at all, in favor of transferring the Cases.  In fact, the balance of convenience favor maintaining these Cases in Delaware.

**D.    The Interest of Justice is Not Served By Transferring Venue.**

59.    In determining whether a transfer would be "in the interest of justice," a "broad and flexible standard" is applied, and the Court should consider "whether transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness."  *Enron*, 274 B.R. at 343 (*quoting Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp*.), 896 F.2d 1384, 1391 (2d Cir. 1990)).  "[T]he considerations involved with the interest of justice are intertwined with the economic and efficient administration of the estate."  *Id.* at 349.  These factors have generally been discussed above and support keeping these Cases in Delaware.

60.    A debtor's right to select a proper forum is pertinent to the interest of justice analysis.  *See, e.g., In re PWS Holding Corp*., 1998 Bankr. LEXIS 549, at *14 (D. Del. April 28, 1998) ("[I]t is a fundamental legal tenet that every citizen of a state is entitled to take advantage of the state and federal judicial process available in that state."); *Caesars Entm't Op Co*., Inc., 2015 WL 495259, at *6 (Bankr. D. Del. Dec. 2, 2015) ("Courts have consistently commented that the debtor's choice of forum is entitled to a certain level of deference if venue is proper under Section 1408.").  Here, each of the Debtors is a long-standing Delaware entity and should be afforded all the accompanying rights and privileges.  The Debtors selection of Delaware as the forum for these Chapter 11 Cases was based on legitimate business reasons and on their sound business judgment.  The interests of justice mandate granting deference to the Debtors and honoring their chosen forum.

61.    Also, as previously laid out, the convenience of the parties, efficient administration of the estate, and judicial economy all weigh in favor or retaining venue in Delaware.  This District has substantial experience with health care cases and the Court has a track record of being willing and able to manage its docket and move cases forwarded promptly, as may be necessary.  Movants have not shown that the Oakland Court would be able to handle these Cases more expeditiously than the Court.  Movants have not shown that the transfer of these Cases to Oakland, CA would not cause delays in these Cases or that the relevant Debtor parties would not be substantially inconvenienced, all of which would be detrimental to the administration of these Cases and may impact the ultimate recoveries to creditors.  Realistically, a change in venue would delay these Cases, not expedite them.

62.    A California ombudsman has been selected by the US Trustee's office, with the consent of the Debtors, and upon appointment will be available to be onsite to ensure continued quality of care of residents at the Parkview Facility.  Any reports of the ombudsman will be filed with the Court electronically, not in person.  And, the ombudsman likely will appear before the Court, if needed, through counsel, whether in Delaware or California, and if necessary, could appear by Zoom.  Transferring venue to Oakland, CA would not be substantially more convenient for the ombudsman.  In fact, the confusion to employees and vendors, as well as the distraction and expense resulting from a transfer of venue, would likely have a detrimental impact on patient care; maintaining the Cases in Delaware would avoid those risks.

63.    Movants also have not shown, and cannot show, that principles of "fairness" dictate transferring these Cases to the Oakland Court.  Rather, concepts of fairness support honoring the Debtors' selected forum, which was properly chosen.  Concepts of fairness dictate that a Delaware entity has a right to have a Delaware court decide issues of Delaware law that are critical to its survival.  Concepts of fairness also support not transferring the Cases to Oakland, CA to the benefit of certain creditors but to the detriment of the administration of these Cases, the estates and potentially other creditors.  The Motion to Transfer contains many

28

generalities and much speculation regarding the Delaware forum inconveniencing creditors and witnesses, but Movants have not demonstrated (and cannot) that the Oakland Court is a substantially better forum for these Cases, or their creditor body as a whole.  As stated above, to the extent not stayed, the personal injury litigations will continue to be liquidated by the court in which they are currently pending, not by the Court.  Transferring these Cases to the Oakland Court will not change those facts.  Moreover, many creditors assert they were injured at other Mariner Facilities, some of which are located hundreds of miles away from Oakland, CA.  If these Cases were transferred to Oakland, would those creditors have a right to seek to move the Cases closer to their applicable facility?  No.  The location of the specific Facility is simply not a determinative factor in these Cases -- which are not a single asset real estate case or a typical single facility case.  *See, supra* ¶¶ 9, 51.  And, to the contrary, the Oakland Court would be a less convenient forum for many parties involved in these Cases.  *See supra* 39-47.  Principals of fairness support keeping the Cases in Delaware.  The only party that would benefit from a transfer of venue would be the attorneys for the Ledesma Plaintiffs who will become more embolden than by controlling 3 of the 7 seats on the Committee.

64.     For these reasons, transferring venue to California would not serve the interests of justice.  Rather, the interests of justice weigh heavily in granting deference to the Debtors' chosen forum and allowing a Delaware court to preside over issues of Delaware law and these Cases to proceed expeditiously in Delaware.

## **CONCLUSION**

65.     In sum, venue is legally proper in this Court and the Debtors are entitled to substantial deference as to their choice of forum.  While the Court has discretion on whether to transfer venue, Movants have failed to meet their burden to establish that venue should be transferred.  A proper analysis of the "convenience of the parties" and "interests of justice" demonstrates that <u>neither</u> would be better served by a venue transfer.  For the reasons set forth herein, the Debtors urge this Court to maintain venue of these cases in Delaware and to deny the Motion to Transfer.

WHEREFORE, the Debtors respectfully request that this Court enter an order denying the Motion to Transfer, and granting such other and further relief as this Court deems appropriate.

Dated: October 18, 2022        /s/ Laura Davis Jones
        Wilmington, Delaware      Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Mary F. Caloway (DE Bar No. 3059)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:   (302) 652-4100
Facsimile:    (302) 652-4400
Email:        ljones@pszjlaw.com
               tcairns@pszjlaw.com
               mcaloway@pszjlaw.com

- and -

Hamid R. Rafatjoo (*pro hac vice*)
Carollynn H.G. Callari (*pro hac vice*)
David S. Forsh (*pro hac vice*)
**RAINES FELDMAN LLP**
1350 Avenue of the Americas, 22nd Floor
New York, NY 10019-4801
Telephone:   (917) 790-7100
Email:        hrafatjoo@raineslaw.com
               ccallari@raineslaw.com
               dforsh@raineslaw.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*