**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MARINER HEALTH CENTRAL, INC., *et al.*,[1]<br>Debtors. | Chapter 11<br><br>Case No. 22-10877 (LSS)<br><br>(Jointly Administered) |

**DECLARATION OF LAWRENCE PERKINS IN SUPPORT OF THE DEBTORS'
OBJECTION TO MOTION TO TRANSFER VENUE OF BANKRUPTCY CASES
TO THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

I, Lawrence Perkins, hereby declare under penalty of perjury as follows:

1.  I am the Chief Executive Officer and Founder of SierraConstellation Partners LLC ("**SCP**"), a national interim management and advisory firm, and restructuring advisor to the above-captioned debtors and debtors in possession. I also am the Chief Restructuring Officer ("**CRO**") of Mariner Health Central, Inc. ("**Mariner Central**"), Parkview Holding Company GP, LLC ("**Parkview GP**"), and Parkview Operating Company, LP ("**Parkview**"), the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**" or "**Cases**").

2.  I submit this declaration (the "**Declaration**") in support of the *Debtors' Objection to the Motion to Transfer Venue of Bankruptcy Cases to Bankruptcy Court for the Northern District Of California, Oakland Division* (the "**Objection**"). Capitalized terms used but not defined herein have the meaning ascribed in the Objection.

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are Mariner Health Central, Inc. (6203), Parkview Holding Company GP, LLC (1536), and Parkview Operating Company, LP (7273). The Debtors' headquarters are located at 3060 Mercer University Drive, Suite 200, Atlanta, GA 30341.

3.      I am familiar with the Debtors' operations, business affairs, books and records, and circumstances leading to and during these Chapter 11 Cases. Except as otherwise indicated herein, all facts set forth in this Declaration are based on (a) my personal knowledge of the Debtors' operations and finances, and/or my review of the Debtors' books and records, or relevant documents, (b) information I received from the SCP team working under my supervision or direction, or the Debtors' management team and their advisors, and/or (c) my opinion based upon my experience as a restructuring professional. I am authorized to submit this Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## PROFESSIONAL BACKGROUND

4.      I have over 20 years of experience in the turnaround industry that has included interim management and turnaround consulting for middle market companies across the United States. Among other things, I have served as a chief restructuring officer, interim CEO, turnaround advisor, strategic consultant, and crisis manager in many industries, including healthcare companies.

5.      In July 2021, SCP was engaged by Mariner Central to evaluate its financial affairs and provide it with business financial advice and support the company in its evaluation of strategic alternatives. At all times, I was the designated principal with overall responsibility on behalf of SCP for the engagement. For more than a year before the Petition Date, my team and I worked with the Debtors to analyze their financial condition and provide advice on liquidity and business strategies. Prior to the Petition Date, I was appointed CRO to facilitate the Debtors' course through bankruptcy to a viable reorganization and a fair result for creditors and stakeholders. Since the Petition Date, the Debtors and their advisers have been working to satisfy their obligations as debtors in possession, alleviate any patient, employee, and vendor concerns about the

commencement of these Cases, reach resolutions with parties where they can, and move these Cases forward.

## CASES BACKGROUND

6.      On September 19, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are operating as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and an official committee of unsecured creditors was appointed on October 7, 2022.

7.      The three Debtors are part of the Mariner Health Care group of healthcare services providers, consultants and holding companies, all of which are direct or indirect subsidiaries of non-Debtor Mariner Health Care, Inc. (collectively, the "**Mariner Companies**"). Certain of the Mariner Companies operate 20 skilled nursing facilities (the "**Mariner Facilities**"), with nearly 2,200 licensed beds and approximately 3,100 employees, that provide short-term rehabilitation, comprehensive post-acute skilled care, long-term care, therapy, and other services. Additional information regarding the Debtors' operations, structure, liabilities, and the events leading up to the commencement of these cases is set forth in the *Declaration of Lawrence Perkins in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 12] (the "**First Day Declaration**"), which is incorporated herein by reference.

8.      Parkview operates a skilled nursing facility with 121 beds located in Hayward, California, while Mariner Central provides certain support services to Parkview and to the other Mariner Companies that operate the Mariner Facilities (collectively with Parkview, the "**Operators**"). Debtor Parkview Holding Company GP, LLC is the general partner of Parkview.

9. Each Operator is party to an Administrative, Clinical and Operational Support Agreement (each, a "**Support Agreement**") with Mariner Central, pursuant to which Mariner Central provides such counterparty with various services such as: (a) administration of payroll and personnel services; (b) bookkeeping, accounting and related administrative support, budgeting, financial analysis and reporting; (c) billing and collection services; (d) orderly and timely payments of all accounts payable related to the operations of the applicable Facility, including taxes, insurance premiums, and vendor payables; (e) assistance in securing insurance; (f) handling Medicaid, Medi-Cal, and other reimbursement programs; (g) preparation and filing of tax returns; (h) negotiating and managing national contracts and other purchasing services; and (i) insurance procurement. Mariner Central also (i) bills and submits claims to Medicare, and is responsible for reporting and returning overpayments, on behalf of the Operators; (ii) coordinates offsite document storage; (iii) assists Operators with clinical support, including providing policies and procedures and training thereon, and provides a wide range of supporting activities through operational support teams; and (iv) provides in-house counsel, legal support and compliance services to the Operators and obtains, directs and coordinates with outside counsel as needed.

## HEADQUARTERS AND CONVENIENCE

10. All of the Mariner Companies are organized under Delaware law. I am aware that many of the Mariner Companies have on multiple occasions been found to lack minimum contacts with, and not be subject to general or specific personal jurisdiction in, California notwithstanding that all revenues of the Mariner Companies are derived from operations in California. For example, in December 2020, the Ledesma Action trial court found that it lacked jurisdiction over Mariner Health Care, Inc., National Senior Care, Inc., Mariner Health Care Management Company, MHC West Holding Company, and GC Holding Company 2 LLC (all of which are parent companies of either Parkview or Mariner Central) because they lacked the requisite

minimum contacts with California. A true and correct copy of this order is attached hereto as **Exhibit 1**.

11. Similarly, in July 2022, the PSC Action court found that Mariner Health Care Inc., National Senior Care, Inc., and Mariner Health Care Management Company lacked the requisite minimum contacts with, and were not subject to general or specific personal jurisdiction in, California. A true and correct copy of this order is attached as **Exhibit 2**. In so finding, the PSC Action court stated that Mariner Central "is [not] based in California . . ." *Id.* at 5.

12. Like all other Mariner Companies, each Debtor was formed under the laws of the State of Delaware. Parkview is a Delaware limited partnership, Parkview GP is a Delaware limited liability company, and Mariner Central is a Delaware corporation. Mariner Central was formed in 2002, while Parkview and Parkview GP were formed in 2014. At all times, each of the Debtors has been organized and existing under the laws of the State of Delaware.

13. Mariner Central is, and has been at all times since its formation, headquartered in Atlanta, Georgia. Apart from myself, Mariner Central has 3 officers: Kenneth Tabler, Devin Ehrlich, and Dennis Sarcauga. Mr. Tabler, the President of Mariner Central, resides in and works out of Maryland, where he maintains certain financial books and records, while Mr. Ehrlich, the Vice President and Secretary of Mariner Central, resides in Georgia and works out of the corporate headquarters in Atlanta. Notably, Mr. Tabler and Mr. Ehrlich were also the sole directors of Mariner Central before the appointment of an independent director in advance of the Petition Date. I am the CRO of Mariner Central and reside in, and frequently work out of, Tennessee. Delaware is substantially more convenient than Oakland for me, and for Mr. Tabler and Mr. Ehrlich. In my opinion, it is plain that Mariner Central's "nerve center," or the location where its principal

decisions have been made, is in Maryland or Atlanta (i.e., on the East Coast) and is not in California.

14. I am aware that Movants have claimed that Mariner Central is based in California because it leases certain office space there, in particular a space in Hayward, California that "could accommodate . . . 20, 25 people." (Motion ¶ 7.) While that space could perhaps accommodate that many people, it does not (and would not be relevant if it did). Mariner Central uses this office, and the approximately 16 employees who work out of this office, to provide billing support services under the Support Agreements to its Operator counterparties. No directors or officers of Mariner Central are based out of this office, nor is this office where major corporate decisions are made. This office is not the corporate headquarters.

15. Mariner Central also maintains an office in Montrose, California. Mariner Central uses this office, and the approximately 16 people working out of this office, to provide payable management services under the Support Agreements to its Operator counterparties. No directors or officers of Mariner Central are based out of this office, nor is this office where major corporate decisions are made. This office is not the corporate headquarters.

16. Mariner Central has other employees in California who provide various day-to-day services pursuant to the Support Agreements across various Operators. Those employees are not based in any Mariner Central office or, for the avoidance of doubt, at any Operator.

17. The only other office maintained by Mariner Central is in Atlanta, where Mr. Ehrlich resides and is based. Mr. Ehrlich, an attorney, is responsible for the general corporate matters, compliance matters, labor relations, and regulatory issues facing Mariner Central and is also the head of the Mariner Central in-house legal group, where he actively oversees the defense of various actions that are highly material to the Debtors, including but not limited to the Integra

Action and the action brought by the People of the State of California, as well as various professional liability, labor and employment-based actions. In addition, as the Secretary of Mariner Central, Mr. Ehrlich is responsible for corporate meetings and related actions by Mariner Central (with the minutes of such meetings maintained by Mariner Central's general corporate counsel in New York and by a paralegal in Houston, Texas). Accordingly, it is plain that Mariner Central's headquarters is not in California.

18. Further, I expect that the California-based employees of Mariner Central will have limited roles with respect to the administration of these Chapter 11 Cases and the Debtors' reorganization efforts. In contrast, Mr. Ehrlich (in Georgia) has been and will continue to be instrumental in assuaging employee, union and vendor concerns in light of the Debtors' commencement of these Chapter 11 Cases and in assuring the Debtors' operational compliance within the parameters of the Bankruptcy Code and related first day relief. Similarly, Ms. Owen (in Texas) is responsible for managing the Debtors' contracts and reconciling claims, has been the primary contact for the Debtors' advisors in developing the schedules and statements of financial affairs, and will continue to serve as the primary contact for documentation needs and claims issues relating to these Chapter 11 Cases. Finally, Mr. Tabler (in Maryland) has been and will continue to be crucial in managing the Debtors' operations and liquidity needs and in any potential postpetition or exit financing.

19. I note also that Mariner Central's assets are certain contract rights, intellectual property and cash. I understand that such assets are not easier to administer in California than in Delaware.

**CONVENIENCE FOR CREDITORS**

20. I do not agree that venue in California is more convenient for the various parties pursuing litigation against the Debtors. As set forth in their schedules, the Debtors are defendants

in approximately 20 pending matters before state or federal courts or arbitral tribunals in California, including the Ledesma Action, Integra Action and the PSC Action.

21. Of these actions, only the Ledesma Action has been reduced to judgment, although it is subject to already-filed appeals – on grounds including but not limited to the trial court's errors in joinder of the widely-varying claims, factual circumstances and liability theories of 10 disparate plaintiffs in one action before a single jury and in allowing the introduction of consolidated financial information for all Mariner Companies (despite denying the plaintiffs' alter ego claims) before that jury, which errors were highly prejudicial to the Debtors – that will require extensive further proceedings in California state appellate court to resolve, and which the Debtors expect will result in new trials on the claims of the Ledesma Action plaintiffs. All other actions to which the Debtors are subject are merely in the initial stages and will require even further proceedings and trials in the underlying actions to determine the merits of those claims, which will remain in California.[2]

22. Accordingly, it is my opinion that the additional burden – if any – on any litigation claimant from the Debtors' bankruptcy cases proceeding in Delaware (rather than in Oakland) is utterly miniscule in comparison to the massive burdens that all such creditors have yet to overcome in the underlying actions to pursue their claims against the Debtors.

23. I note that the PSC Action (with respect to which the Debtors and other defendants deny all allegations and wrongdoing but for which exposure is estimated at approximately $2 million) raises automatic stay and ongoing operational considerations of particular import that will need to be addressed prior to and in any plan of reorganization. However, the claims of the PSC

---

[2] Most of these claims, like the Ledesma Action claims, are for personal injuries and therefore are not subject to liquidation by bankruptcy courts. At this time, the Debtors do not intend to seek removal of other actions (such as the Integra Action) and expect to litigate and liquidate such actions in the current fora.

Action are years away from resolution under California law in the current court, regardless of where the Debtors' bankruptcy cases are located, and any additional inconvenience to the PSC Action plaintiffs from proceeding in Delaware (rather than in Oakland) for the limited number of bankruptcy issues that will be relevant to the PSC Action appears minimal.  While it should be no surprise that the PSC Action plaintiffs would prefer bankruptcy venue in California, it is notable that they did not deem bankruptcy venue in Delaware to be such an inconvenience that warranted bringing their own independent motion to transfer venue.[3]

24.    I note also that, of all the litigation claims against the Debtors, it is clear that the Integra Action is the most significant claim against the Debtors.  This is because the Ledesma Action claims are not only subject to the Ledesma Appeals, where the Debtors expect to prevail, but also are subject to potential subordination, separate classification, and discharge pursuant to a plan of reorganization.  In contrast, the Integra Action claims are purportedly for not less than $94.58 million (an amount far greater than any conceivable outcome of the Ledesma Appeals and indeed any potential exposure on all other litigation claims in the aggregate) against the Debtors and other Mariner Companies (all of whom have indemnification and advancement claims against Mariner Central as set forth in the related adversary proceeding, all of which claims will, if not entitled to administrative expense priority, have equal priority to other unsecured claims).  In addition, Integra may potentially assert that its claims are non-dischargeable (which, for the avoidance of doubt, the Debtors dispute) but this is not an issue with respect to the Ledesma Action.  However, Integra is based in Texas, and its primary counsel (Reid Collins Tsai) is also based in Texas and is well familiar with Delaware bankruptcy courts.  Particularly because the

---

[3]  Indeed, because the PSC joinder to the venue motion was filed only after the Debtors (a) served the adversary proceeding complaint and the related motion for injunctive relief, and calendared that motion for hearing on October 25, 2022, and (b) rejected a written request by the PSC to withdraw that motion, it appears that this venue joinder is merely a litigation tactic.

time differential is less between Texas and Delaware than between Texas and California, a bankruptcy proceeding in Delaware is likely more convenient for the Debtors' most significant litigation claimant.

25. Finally, apart from the plaintiffs in these 20 legal proceedings, the Mariner Central schedules show approximately 109 claimants. Only 30 of these claimants appear to be in California (excluding other Mariner Companies, employees with indemnification claims and ordinary course professionals, on the grounds that such persons are likely to support the Debtors' choice of venue) while 51 claimants appear not to be in California. Such creditors, which include Pharmerica, Fedex, Hireright f/k/a Kroll Background Services, Pitney Bowes, Staples, ADP and DirectTV, are likely significantly more experienced with and would prefer bankruptcy venue in Delaware rather than in the Northern District of California, Oakland Division.

26. Other key creditors are also based outside of California and would have a more convenient venue in Delaware. In particular, one of the creditors of Mariner Central, Fundamental Administrative Services, LLC ("**FAS**"), the subcontractor for Mariner Central that provides many of the back-office support services to Operators under the Support Agreements, is based in and operates exclusively out of Maryland. I note that the contracting agreement between FAS and Mariner Central is governed by Maryland law and related claims are subject to venue in Baltimore, Maryland. FAS is likely to be a particularly relevant party to these cases, as it serves as the controller for each Debtor and maintains certain books and records of the Debtors at its offices in Maryland.[4] For example, FAS provided certain information needed for the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs. Attached hereto as **Exhibit 3** is a true

---

[4] In addition, the Debtors' books and records are subject to periodic review by KPMG, operating out of Baltimore, Maryland, and maintaining certain books and records relating to the Debtors at such location.

and correct copy of a declaration submitted on behalf of FAS objecting to venue in California and supporting venue in Delaware.

27. Many of the Debtors' creditors actively support venue for these Cases in Delaware:

   a. Attached hereto as **Exhibit 4** is a true and correct copy of a declaration from Parkview's landlord supporting venue of these Cases in Delaware.

   b. Attached hereto as **Exhibit 5** is a true and correct copy of a declaration from Pharmerica supporting venue of these Cases in Delaware.

   c. Attached hereto as **Exhibit 6** is a true and correct copy of a declaration from Boyd Gentry supporting venue of these Cases in Delaware.

   d. Attached hereto as **Exhibit 7** is a true and correct copy of a declaration from Sysco Corporation supporting venue of these Cases in Delaware.

28. Similar considerations apply with respect to Parkview (and all of the claims against Parkview Holdco arise as a result of its role as general partner for Parkview). In contrast to the limited number of legal proceedings that are occurring in California, as described above for Mariner Central, more than 50 non-litigation creditors are not based in California and, in my opinion, are not likely to have closer proximity to or to prefer venue in Oakland rather than in Delaware.

## THE DEBTORS' CHOICE OF VENUE

29. In commencing these cases, the choice of bankruptcy venue and available alternatives were duly considered by the Debtors. Without limiting the foregoing, it is my opinion based on considerable experience in bankruptcy courts across the country, including but not limited to Delaware and California, that Delaware is the best available alternative for venue for the Debtors to successfully reorganize. The reasons for this include but are not limited to (i) the greater experience and familiarity of the Delaware bankruptcy bench and bar with restructuring

issues that may arise in these cases; (ii) the more-developed body of caselaw relating to and greater predictability for such issues; (iii) that issues of alleged alter ego/veil piercing, may become central to these cases and, in accordance with the internal affairs doctrine, will be decided under Delaware law; (iv) the greater experience and familiarity of Delaware bankruptcy bench and bar with certain issues of Delaware corporate law that may arise in these cases, including but not limited to what I understand may be certain issues for which there may not be settled law; (v) that potential witnesses and records potentially relevant to such issues are located on the East Coast (in Atlanta or Maryland) with substantially greater proximity to Delaware than to California; and (vi) that the Debtors' chosen restructuring counsel is based in New York and in Delaware.  I also understand that the creditors' committee has selected counsel based in Delaware and Philadelphia.

30.    It is particularly important for these cases to be resolved quickly.  The Debtors are self-funding these cases and have sufficient, although constrained, liquidity to pursue and achieve a relatively speedy reorganization.  I note that, as referenced in the First Day Declaration, the Debtors obtained a valuation of their assets for less than $1 million before the Petition Date and that the Debtors were unable to obtain reasonable postpetition financing, suggesting that the Debtors' assets may be less than attractive to third-party lenders.  A lengthy and contentious bankruptcy process will produce an outcome that is highly adverse to creditors and stakeholders.  Overall, upon consideration of the foregoing circumstances, it is my business judgment that the Debtors are materially more likely to achieve a successful reorganization with venue of these Chapter 11 Cases in Delaware.

*[remainder of page intentionally left blank]*

**CONCLUSION**

31. For the reasons described herein, I believe that it is in the best interest of the Debtors and their estates, and that it is in the interests of justice, and for the convenience of the parties, that the Court deny the Movants' motion to transfer venue of these Chapter 11 Cases from Delaware to the Northern District of California, Oakland Division.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: October 18, 2022

By: */s/ Lawrence Perkins*
Lawrence Perkins
Chief Restructuring Officer of the Debtors

*Signature Page to Perkins Declaration*