21095897

FILED
ALAMEDA COUNTY

DEC 30 2020

CLER&Q.F THE SVEZIOR COURT
)tit/ · W'

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| LEDESMA, et al.,<br><br>    Plaintiffs<br><br>v.<br><br>MARINER HEALTH CARE, INC., et al.,<br><br>    Defendants. | Case No. RG19025110<br><br>ORDER GRANTING DEFENDANTS' MOTION TO QUASH SERVICE OF SUMMONS FOR LACK OF PERSONAL JURISDICTION |

The motion of Defendants Mariner Health Care Management Company, Mariner Health Care, Inc., MHC West Holding Company, National Senior Care, Inc., GC Holding Company 2 and Fundamental Administrative Services, LLC to quash the service of summons for lack of personal jurisdiction came on for hearing in Department 15 on October 29, 2020, and Novembei 4_ 2020, at 1:30 pm. Darryl A. Ross appeared for Defendants; and Susan Kang Gordon, .lennifer Fiore and Sophia Achermann appeared for Plaintiffs. The court took the matter under submission on November 4, 2020.

Having reviewed to pleadings and heard the arguments of counsel, and good cause appearing, the motion is GRANTED.

Ledesma Order Granting Motion to Quash

I.    BACKGROUND:

This is an action for elder abuse and neglect, negligence, financial elder abuse, conversion, breach of fiduciary duty and statutory violation filed by 13 residents of the Parkview Healthcare Center ("Parkview"), a skilled nursing facility located in Hayward, California. Plaintiffs are senior citizens and/or elders or dependent adults as defined by Welfare and Institutions Code §§ 15610.27 and 15610.23, and Civil Code § 1761(f). (Third Amended Complaint ("TAC"), VII 2-17.) The moving parties herein are National Senior Care, Inc., Mariner Health Care, Inc., Mariner Health Care Management Company, MHC West and GC Holding Company 2 (collectively the "Mariner Entities") and Fundamental Administrative Services ("FAS"; the Mariner Entities and FAS are collectively referred to herein as the "Mariner Defendants"). The Third Amended Complaint alleges that the Mariner Defendants have regularly conducted business throughout California including the ownership, licensing, administration, operation, management and supervision of Parkview in the County of Alameda and 20 other skilled nursing facilities in California. The gravamen of Plaintiffs claims is that the Mariner Defendants —the moving parties herein-- acted as the alter egos and agents of each other in owing. controlling and managing Parkview. (TAC at IN 31-43.) Parkview Operating Company, LP, the licensee and operator of Parkview, Parkview Holding Company GP, LLC, the parent/owner of Parkview Operating Company, LP, and Mariner Health Central, Inc., a subsidiary of Mariner Health Care Management Company, are not contesting personal jurisdiction.

Plaintiffs contend that Parkview was inadequately staffed, had inadequate security, and was managed in such a way as to provide inadequate services to the residents, including failure to respond to light calls, providing inadequate supplies, failing to provide sound care, improper

hygiene and rehabilitation services, inadequate infection controls, and the failure to report violent and sexual assaults to the Department of Public Health. (TAC at ¶¶ 48-84.) Plaintiffs further allege that the inadequate staffing and failure to provide services to Parkview residents was part of a policy and practice of the Mariner Defendants undertaken and maintained in order to save money and increase profits to the Mariner Defendants (TAC at ¶ 190.) In short, Plaintiffs individual claims for personal injury, elder abuse and statutory violations are alleged to have directly arisen from management policies and practices adopted or implemented by the Mariner Defendants, independent of and in addition to, the alleged deficiencies in services or health care provided to any individual Parkview resident.

Defendant moves to quash service of the summons as to the Mariner Defendants on the grounds that both general and specific jurisdiction are lacking over the Mariner Defendants as the litigation does not result from alleged injuries that arise out of or relate to the Mariner Defendants' activities in California. (Defendants' Brief at page 7:22-26.) Plaintiffs contend otherwise, and assert that the Mariner Defendants' activities in California were sufficiently pervasive to confer both general and specific jurisdiction over defendants, and in the alternative artaue that the Mariner Defendants are alter egos and/or the agents of each other, and of defendant Parkview, the resident California defendant over whom the court has asserted personal jurisdiction.

II.     THE APPLICABLE LEGAL STANDARD

A motion to quash is not a determination of the merits of the case. *(School Dist. of Okaloosa County v. Superior Court* (1997) 58 Cal.App.4th 1126, 1133-1134.) A motion to quash is "strictly limited to the question of jurisdiction over the defendant." *(Id.)* In order to decide that limited question, the court has the power to resolve issues of fact under the applicable

rules of evidence. *(Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1234.) The court must form its own independent conclusions about whether the plaintiff has submitted probative evidence of specific jurisdictional facts. *(Id.* at p. 1233.) In this context, the court "is not bound to accept as true the sworn testimony of a witness even in the absence of evidence contradicting it . . . ." *(Warner Bros. Records, Inc. v. Golden West Music Sales* (1974) 36 Cal.App.3d 1012, 1017, fn. 7.) The court is also entitled to ignore flawed evidence even if no objection is made. *(Inselberg v. Inselberg* (1976) 56 Cal.App.3d 484, 489.)

When personal jurisdiction is challenged by a motion to quash, the plaintiff bears the initial burden to establish that the exercise of personal jurisdiction over the defendant is constitutional. *(Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449, *overruled on other grounds in Bristol-Myers Squibb Co. v. Superior Court* (2017) 137 S.Ct. 1773, 1781.) Once established, the burden shifts to Defendants to prove that the exercise of jurisdiction would be unreasonable. *(Floveyor Internat., Ltd. v. Superior Court* (1997) 59 Cal.App.4th 789, 792-794.)

California courts may exercise personal jurisdiction on any basis consistent with the Constitutions of California and the United States. (Code Civ. Proc. § 410.10.) "The exercise of jurisdiction over a nonresident defendant comports with [the Constitution] 'if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate 'traditional notions of fair play and substantial justice.'" *(Snowney v. Harrah's Entertainment; Inc.* (2005) 35 Cal. 4th 1054, 1061; *Pavlovich v. Superior Court* (2002) 29 Cal. 4th 262, 268; *Vons Companies. Inc. v. Seabest Foods. Inc., supra,* at 444; *see International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).) "The concept of minimum contacts . . . requires states to observe certain territorial limits on their sovereignty" and "ensure[s] that the States, through their

courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *(World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 292; *Vons, supra,* at 445.) Under the minimum contacts test, "the court evaluates, weighing the facts of each case, 'whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State." *(Snowney, supra,* 35 Ca1.4th at 1061, *citing Kulko v. California Superior Court* (1978) 438 U.S. 84, 92; *International Shoe, supra,* at 316-17; *Pavlovich, supra,* at 268.) The U.S. Supreme Court recognizes two types of personal jurisdiction: general and specific. *(Bristol-Myers, supra,* at pp. 1779-1780.)

    A.  General Jurisdiction

"General jurisdiction is proper only where the defendant's contacts in the forum are continuous and systematic." *(Shisler v. Sanfer Sports Cars. Inc.* (2006) 146 Cal App. 4th 1254, 1259.) "Continuous and systematic contacts include such activities as maintaining an office and employees in the forum, use of forum bank accounts, and the marketing or selling of products in the forum state." *(Helicopteros Nacionales de Columbia v. Hall* (1984) 466 U.S. 408, 415.) The "standard for establishing general jurisdiction is fairly high" and requires that the defendant's contacts be of the sort that approximate physical presence. *(Ellanan v. National States Ins. Co.* (2009) 173 Cal App. 4th 1305, 1315.) "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *(Id.)* Where a defendant has no physical presence in California, is not registered to do business here, and has never intentionally directed its marketing efforts to California residents, insufficient contacts exist for the exercise of general jurisdiction. *(See Helicopteros Nacionales de Columbia, supra,* 466 U.S. at 415; *Shisler, supra,* 146 Cal. App. 4th at 1259.)

B.     Specific jurisdiction

If the defendant's contacts are not pervasive, the court may still exercise specific jurisdiction over a defendant based upon contacts that relate directly to the transaction, activity or injury out of which the suit arises. *(Helicopteros Nacionales• de Columbia, supra,* at 411, n. 8.)  A nonresident who lacks substantial, systematic contacts with a state will be subject to "specific jurisdiction" if (1) the nonresident has purposefully availed itself of the benefits and protections of the state's laws, (2) the controversy arises out of the nonresident's contacts with the state, and (3) it would be fair and just to assert jurisdiction. *(Burger King Corp. v. Ruclzeivicz* (1985) 471 U.S. 462, 472; *Pavlovich,* 29 Cal. 4th at 269.)  As the relationship of the defendant with the state seeking to exercise jurisdiction grows more tenuous, the scope of jurisdiction retracts. *(Cornelison v. Chaney* (1976) 16 Ca1.3d 143, 148.)

The purposeful availment inquiry focuses on the defendant's intentionality. This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on his contacts with the forum. Thus, purposeful availment occurs where a nonresident defendant purposefully directs his activities at residents of the forum, purposefully derives benefit from his activities in the forum, creates a substantial connection with the forum, deliberately has engaged in significant activities within the forum, or has created continuing obligations between himself and residents of the forum. By limiting the scope of a forum's jurisdiction in this manner, the purposeful availment requirement ensures that a defendant will not be hailed into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.

III. ANALYSIS

Plaintiffs offer three theories for the assertion of jurisdiction over the Mariner Defendants, alter ego/agency, and general and specific jurisdiction.

### A. Alter-Ego

Plaintiffs argue that the jurisdiction in California is proper because Defendants National Senior Care, Inc., Mariner Health Care, Inc., Mariner Health Care Management Company, MHC West Holding Company, GC Holding Company 2, LLC and Fundamental Administrative Services, LLC are all essentially either agents for, or alter-egos of, Mariner Health Central, Inc., and Parkview Operating Company, LP, the Mariner affiliated entities who have conceded jurisdiction. Relying on *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal. App.4th 523, Plaintiffs present evidence in the form of deposition testimony by the the President of Parkview Operating Co. and twenty Mariner operating companies, Linda Taetz, by the President of Mariner Health Central, Inc., Ken Tabler, and by the Administrator of Parkview, Johnson Okere, as well as other documents to support Plaintiffs' claim that the Mariner Entities —characterized as holding companies by the Mariner Defendants-- are essentially the alter-egos of Mariner Health Central, Inc., and Parkview Operating Company, LP. Additionally, Plaintiffs present evidence that Mariner Health Care, Inc. is the guarantor of Parkview's lease, and that that FAS is controlling the purse strings of Parkview.

In order to show that a "parent" entity is the alter-ego of the subsidiary, Plaintiff must show first "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the

corporation alone." *(Sonora Diamond Corp., supra,* at 538, *citing Automotriz etc. De California v. Resnick* (1957) 47 Ca1.2d 792, 796; *Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1358.) When considering whether there is a unity of interests, the court is to consider the "commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other...inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *(Sonora Diamond Corp., supra,* at 538.)

Plaintiffs point to the Mariner Defendants having the same officers and directors, and using the same offices located in Atlanta, Georgia, as evidence that the Mariner Defendants are the alter-ego of each other and of Parkview. The evidence in the record does reflect overlapping officers and board membership among the various "shell companies," *(i.e.,* the Mariner Defendants) as well as the "shell companies" being based out of the same corporate office in Atlanta. Without more, however, overlapping officers and board membership, and shared employees and office space, do not show a complete unity of interests and control between the Mariner Defendants and defendants Parkview, Parkview Operating Company LP and Mariner Health Care Central, Inc. *(U.S. v. Bestfoods* (1998) 524 U.S. 51, 60.)

There is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *(Bestfoods, supra,* 524 U.S. at 60, *citing Lusk v. Foxmeyer Health Corp.* (1997)129 F.3d 773, 779.) The evidence proffered by Plaintiffs clearly establishes that the various corporations within the Mariner Entities family of

8

companies shared directors and board members, and ownership, and that some of the ⁻shell" companies did not have employees. There is also some evidence that some of the companies may not have kept board minutes.  However, in order to show a parent is an alter ego of the subsidiary, much more is required.  There must be some indicia of "commingling of funds and other assets of the two entities, or the holding out by one entity that it is liable for the debts of the other. . .  inadequate capitalization, disregard of corporate formalities, [or]lack of segregation of corporate records."  *(Sonora Diamond Corp., supra,* at  538.) Identical officers, board members and employees alone, will not suffice.

In view of the fact of Plaintiffs having failed to meet their burden of proof on to establish a basis for finding the Mariner Defendants to be the alter egos of Parkview, the court does not reach the issue of whether there is evidence of any wrongdoing or any evidence of injustice flowing from the recognition of the separation of the entities, so as to allow the doctrine to be invoked.  *(Sonora Diamond Corp., supra,* at 540, "Without such evidence, the alter ego doctrine cannot be invoked.")

      B.  Agency

Plaintiffs also invoke the theory of agency to provide a basis for the court finding jurisdiction over the Mariner Defendants.  Plaintiff's argue that the shell company defendants provide "representative services," where the parent company relies on the subsidiary to perform the functions of the parent company in the state at issue. "The parent's general executive control over the subsidiary is not enough; rather there must be a strong showing beyond simply facts evidencing "the broad oversight typically indicated by [the] common ownership and common directorship" present in a normal parent-subsidiary relationship. *(Sonora Diamond Corp supra,* at 542.)  As a practical matter, the parent must be shown to have moved beyond the

establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's *day-to-day* operations in carrying out that policy." *(Id.)*

Plaintiffs' argument regarding "corporate overlap" and the undisputed fact that Taez made reports to the boards of National Senior Care and Mariner Health Care is not enough to establish that the management and control, or the "day-to-day" handling of the activities of Parkview was directed by the Mariner Defendants. Although there is evidence that protocols were discussed, especially those related to COVID-19, there is no evidence that either Ehrlich or Tabler, who are the board members for the boards of most of the defendants, directed policy or day-to-day care decisions at Parkview. Rather, the testimony demonstrates that Erlich and Tabler conducted general oversight of Parkview based on reporting from Taez. Although FAS provided operational services to Parkview and Parkview Holding Company through a contract with Mariner Health Central, Inc., the services provided were financial, payroll, and accounting services, *i.e.,* typical back office services. There is no evidence demonstrating that FAS made actual policy decisions regarding how money was spent or denied any requests by Parkview for funding, or payment of required costs that would place it outside of the purview of a contractor and to subject it to jurisdiction. Although Mariner Health Care is the guarantor of the facilities lease, a lease guaranty does not demonstrate such substantial control or direction of the subsidiary to form an agency relationship between the parties, which would form the basis of jurisdiction. *(Sonora Diamond Corp., supra,* at 523, 542.)

In sum, the court finds that Plaintiffs have not met their burden of proof to establish that the Mariner Defendants are either agents or the alter-egos of Parkview Operating Company, LP or Mariner Health Central, Inc., or Parkview.

Ledesma Order Granting Motion to Quash

C. Jurisdiction Based on Minimum Contacts

Plaintiffs have asserted two additional grounds for personal jurisdiction over the Mariner Defendants --general jurisdiction and specific jurisdiction. The court addresses each of these arguments --and Plaintiffs' supporting evidence— below.

1. General Jurisdiction

As discussed in section II subsection A, above, where a defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated in a state, general jurisdiction over a non-resident may be found.

Preliminarily, it is undisputed by the parties that the Mariner Defendants are not residents of this state. Defendants Mariner Health Care Management Company, Mariner Health Care, Inc. MHC West Holding Company, National Senior Care, Inc., GC Holding Company 2 LLC are incorporated in Delaware and their principal place of business is Atlanta, Georgia. None of the Mariner Entities have an office in California, or actively participate in the management of the Parkview facility. To be sure, one or more of the Mariner Entities hold ownership interests in Parkview, and the operation of activities occurring at the Parkview facility are reported on or monitored by the Mariner Entities. Neither this, nor the fact that the Mariner Defendants share employees and officers establish that the Mariner Defendants' contacts with California, individually or collectively, were "systematic and continuous," or that the Mariner Entities were "purposely availing" themselves of the protection of California law.

The most compelling evidence proffered by Plaintiffs in support of the assertion of general jurisdiction over the Mariner Defendants is Exhibit 0 to the Kang Gordon Declaration, a printout from the marinerhealtcare.com website which identifies twenty health care facilities —

11

nursing homes located in California-- as "Mariner Facilities" and the testimony of Linda Taetz, who testified in her deposition that she was the president of each of the individual operating companies for the 20 Mariner facilities located in California (Taetz Depo. at page 63:16-25.) The common ownership of twenty health care facilities in the state would seem to suggest that the owner was making sales and engaging in business in the state and serving the California market, even if the ownership held through the device of a holding corporation.

      The quantum of ownership and the ownership of many separately incorporated entities providing the same types of services under the umbrella of a single holding company would be factors for the court to consider in making the determination as whether general jurisdiction will lie.  Evidence that a parent holding company with ownership of twenty separately incorporated subsidiaries marketed the services of the subsidiaries to the residents of a state and actively served a particular market —nursing homes in California, for example-- under the parent corporation's name or trade dress arguably could support a finding of general jurisdiction. Jurisdiction in such event would be predicated on the parent's marketing, solicitation of, and engaging in business in California, albeit, through subsidiaries. Though Exhibit 0 suggests that some Mariner Entities may market services to residents of California through its website, and has those services performed through its subsidiaries, Plaintiff's citation to an excerpt to the Mariner Health Care website does not establish the fact of either common ownership or that a particular entity directed its marketing to, or participated in sales within, California. Exhibit 0 also does not contain ownership identification information, or otherwise identify which of the various Mariner Entities owns, controls or operates which of these twenty facilities, or whether they operate under the direction of one or more of the Mariner Entities.  Though Plaintiffs have provided a surfeit of deposition testimony concerning the overlapping responsibilities and even

somewhat confused relationships among the various Mariner Entities, they have provided little or no evidence tying the ownership of multiple facilities to a particular Mariner Defendant, or of active marketing of services to California residents by the Mariner Defendants. That reports were made to the various Mariner Defendants concerning management and health care issues affecting the Parkview facility occurred between and among the various Mariner Entities is not disputed.

Arguably the services provided by FAS to the various operating companies in California, such as processing payroll, depositing funds in bank accounts and providing administrative services could constitute the constitutionally required systematic and continuous contacts to support general jurisdiction. However, the evidence in the record does not establish the fact of those types of activities were taking place or being conducted in California. *(See, e.g., Helicopteros Nacionales de Columbia, supra,* at 415 ["Continuous and systematic contacts include such activities as maintaining an office and employees *in the forum,* use *of forum bank accounts,* and the marketing or selling of products *in the forum state."]* (emphasis supplied).) The evidence suggests the services provided by FAS for the Parkview facility, and for the other Mariner facilities, were rendered outside of California. There is no substantial evidence in the record of FAS maintaining a bank account *in California* (the forum), or providing payroll, accounting and other office and "backroom" services *in California,* or undertaking other activities *in California* that could be deemed to be the "continuous and systematic" contacts *with California* under the controlling precedents.

The fact of a foreign parent owning a subsidiary, and the fact of regular and frequent reporting from the single subsidiary to the parent by employees of the subsidiary, even in the context of a somewhat abstruse and confused corporate structure, without more, does not

13

establish that a parent or sibling corporation makes sales, solicits or engages in business in the state, or serves the state's market, so as to support general jurisdiction over the parent or sibling. That evidence in the record will not support a finding of general jurisdiction, in this case and on these particular facts, based on continuous and systematic minimum contacts with the State of California by the Mariner Defendants.

    2. Specific Jurisdiction

Even where a nonresident lacks substantial, systematic contacts with a state, the nonresident will be subject to "specific jurisdiction" if the nonresident has purposefully availed itself of the benefits and protections of the state's laws, the controversy arises out of the nonresident's contacts with the state, and it would be fair and just to assert jurisdiction. *(Burger King, supra,* 471 U.S at 476-477.) The court has reviewed the evidence submitted in opposition to the motion to quash and, based on the record before the court, has determined that Plaintiffs have failed to meet their burden of proof to establish that the assertion of specific jurisdiction over the Mariner Defendants is constitutional.

As discussed in section C, subsection 1., above, General Jurisdiction, the evidence in the record before the court will not support a finding that the Mariner Defendants had systematic and continuous contacts with California. This same evidence does not establish that the Mariner Entities purposely availed themselves of the protections of California laws. In the case of FAS services, the evidence is more nuanced.

The evidence in the record establishes that FAS contracted with mariner Health Central, Inc. in 2010 to provide administrative services to nineteen skilled nursing facilities in located in California. (Declaration of Darryl Ross filed 9/22/2020 ("Ross Declaration"), Exhibit 3, p. 1.) A defendant who contracts to provide services to nineteen California companies might be said to

14

availed themselves of the protections of California law. Conversely, FAS argues that it has not availed itself of the protections of California law in that it does not employ any individuals within California, does not perform work within California, and has not maintained an office, or bank accounts in California. (Declaration of Melissa Warlow, Exhibit 9 to Ross Declaration, at 6-16.) Taken together, the language of the Administrative Services Agreement and statements in the Warlow declaration could be read to suggest that FAS has not availed itself of the protections of California law. The Administrative Services Agreement limits the support services provided by FAS to payroll administration, billing and collections, deposit of funds, and maintenance of billing records, computers, telephone service, and purchasing services. (Exhibit 3 to Ross Declaration at §§ 2.1-2.10.) Under the terms of the Administrative Services Agreement, Mariner Health Central, Inc. is responsible for the hiring, firing promotion and discharge of Mariner Employees, and Mariner Health Central, Inc retains responsibility for all liabilities and costs, and has sole and exclusive management authority "with respect to [Parkview] including, without limitation, full control of the operation and maintenance of the Facilities." (Exhibit 3 to Ross Declaration at §§ 3.1-3.3.) For the purposes of the specific jurisdiction analysis, however, the court does not have to decide this issue, as Plaintiffs have not met their burden of proof on the second prong of the specific jurisdiction analysis, *i.e.,* that the controversy arises out of the nonresident's *(i.e.,* FAS's) contacts with the state.

      The claims asserted in this action are for inadequate staffing and security, and inadequate services to the Parkview residents, and include a claim that the inadequate staffing and failure to provide services to Parkview residents was part of a policy and practice of the Mariner Defendants undertaken and maintained in order to save money and increase profits to the Mariner Defendants. There has been no showing that FAS participated or had the authority to

participate in staffing, or to make management or administrative decisions or adopt or influence policies that would impact staffing, services or resident services. The court might reach a different conclusion if the controversy in this litigation was the provision of administrative, bookkeeping and other back-office services to the company. The issues in this litigation are resident care, staffing of the facility and other issues related to the health safety and welfare of the Parkview residents. For these reasons the court declines to find specific jurisdiction over FAS, For the reasons discussed above, the court declines to find specific jurisdiction over the Mariner Entities.

IV.     CONCLUSION

The motion to quash service of summons on Defendants Mariner Health Care Management Company, Mariner Health Care, Inc. MHC West Holding Company, National Senior Care, Inc., GC Holding Company 2 LLC and Fundamental Administrative Services, LLC is GRANTED.

DATED:     **DEC 3 0** 2020

Evelio Grillo
Judge of the Supbnor Court

CLERK'S CERTIFICATE OF SERVICE BY MAIL
CCP 1013a(3)

CASE NAME: LEDESMA, et al. vs. MARINER HEALTH CARE, INC. et. al
CASE NUMBER: RG19-025110

I certify that the following is true and correct: I am the clerk in Dept. 15 of the Superior Court of California, County of Alameda and not a party to this cause. I served ORDER GRANTING DEFENDANTS' MOTION TO QUASH SERVICE OF SUMMONS FOR LACK OF PERSONAL JURISDICTION by placing copies in envelopes addressed as shown below and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Susan Kang Gordon
Law Office of Susan Kang Gordon
21C Orinda Way, #162
Orinda, CA 94563

Darryl A. Ross
5440 Trabuco Road
Irvine, CA 92620

Jennifer Fiore
Sophia Achermann
FIORE ACHERMAN, A LAW CORP
340 Pine Street, Suite 503
San Francisco, CA 94104-3237

I declare under penalty of perjury that the following is true and correct
Executed on December 31, 2020 at Oakland, California.

Chad Finke
Executive Officer/Clerk of the Superior Court

by      (1)N'         aivo
*Pam Williams Deputy Clerk*