# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse

| | |
|---|---|
| The People of the State of California<br>　　　　　　Plaintiff/Petitioner(s)<br>vs.<br>National Senior Care, INC., a Delaware Corporation et al<br>　　　　　　Defendant/Respondent(s) | No.    RG21095881<br><br>Date:    07/22/2022<br>Time:   9:30 AM<br>Dept:    23<br>Judge:   Brad Seligman<br><br>ORDER re: Hearing on Motion to Quash<br>Motion to Quash |

The Motion to Quash Service of Summons filed by Mariner Health Care Management CO, a Delaware Corporation, National Senior Care, INC., a Delaware Corporation, Mariner Health Central INC, a Delaware Corporation on 10/26/2021 is Granted.

The Specially Appearing Defendants' Motion to Quash is GRANTED.

The parties' requests for judicial notice are DENIED as irrelevant.

BACKGROUND

Specially Appearing Defendants Mariner Health Care, Inc.; National Senior Care, Inc.; and Mariner Health Care Management Company (the "SAD" or "Mariner Defendants") move to quash service of the summon pursuant to Code of Civil Procedure § 418.10, subd. (a).

The SAD challenge the court's exercise of both general and specific personal jurisdiction, asserting they are entities formed under the laws of the State of Delaware with principal places of business outside of California (i.e., Georgia and/or Maryland).

A. The Complaint

On April 8, 2021, the People of the State of California (the "People") filed a civil complaint against the Mariner Defendants, Mariner Health Central, Inc., and approximately 19 California-based skilled nursing facilities and their operating entities (together, "SNF" or "Licensee Defendants," and together with SAD, "Defendants"). (Complaint, ¶¶ 7-30.)

The People allege that Defendants failed to adequately staff the various residential care facilities, improperly discharged residents, and obtained a "Five Star Rating" from the Center for Medicare and Medicaid Services through submission of falsified information. (Complaint, ¶¶ 1-4.) The People allege that these practices violated California's Unfair Competition and False Advertising Laws and created a public nuisance. (Complaint, ¶ 5; see also Complaint, ¶¶ 108-114.)

B. The Mariner Defendants

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

The Complaint alleges that each "SNF is run by upwards of a dozen legal entities with various shell entities," which are organizationally situated underneath the Mariner Defendants. (Complaint, ¶ 7; Owens Decl., Ex. 2.)

At the top of the hierarchy is SAD National Senior Care, Inc., which is a holding company incorporated under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia. (Owen Decl., ¶ 3; Complaint, ¶ 9.) National Senior Care, Inc. owns 100% of the stock of SAD Mariner Health Care, Inc. (Owns Decl., Ex. 2.)

SAD Mariner Health Care, Inc. is a holding company incorporated under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia. (Owen Decl., ¶ 3; Complaint, ¶ 8.)

SAD Mariner Health Care Management Company is a holding company incorporated under the laws of the State of Delaware with its principal place of business within the State of Georgia and/or Sparks, Maryland. (Owen Decl., ¶ 3 [Georgia]; Complaint, ¶ 10 [Sparks, Maryland].)

Although not contesting jurisdiction, Defendant Mariner Health Central, Inc. ("Mariner Central") is organizationally situated beneath SAD Mariner Health Care Management Company. (Owen Decl., Ex. 2.) Mariner Health Central, Inc. offers evidence in support of the SAD's Motion to Quash.

C. Mariner Defendants' Activities

The SAD are formally separate legal entities from the SNF and their operating entities (i.e., Licensee Defendants). (Owen Decl., ¶¶ 1, 9.) The SAD do not participate in the day-to-day management or operations of the SNF, and do not have any employees within the State of California. (Owens Decl., ¶ 11; see also Taetz Decl., ¶¶ 8-10 [no employees]; Tabler Decl., ¶¶ 9-11 [no employees].)

The SAD do not directly own or operate any of the SNF within the State of California. (Owns Decl., ¶ 5.) A nonparty entity held the licenses to operate the SNF; however, at various points before 2020, the licenses were transferred to several other entities within the corporate structure. (Owens Decl., ¶¶ 13-66.) The same of true for Pine Ridge Care Center, but the transfer occurred sometime during the period alleged in the complaint. (Owens Decl., ¶ 66.) The SAD are not affiliated with Fruitvale Long Term Care LLC. (Owns Decl., ¶ 12.)

The SAD have never maintained any offices in California and have never been registered to do business in California. (Owens Decl., ¶¶ 6, 8.) The SAD neither own property nor hold a possessory interest in any property within California. (Owens Decl., ¶ 4; Tabler Decl., ¶ 12.)

The SAD do not hold any mortgages or liens within the State of California, do not maintain accounts at any bank or depository within California, and do not pay taxes within California. (Owens Decl., ¶ 7.)

D. Mariner Defendants' Jurisdictional Evidence

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

In support of the Motion to Quash, the SAD submit the declarations of the chief compliance officer and the president of Defendant Mariner Health Central, Inc. ("Mariner Central"), which is not contesting jurisdiction. As noted above, Mariner Central is situated beneath SAD Mariner Health Care Management Company and appears to be a Delaware corporation with its principal place of business in Georgia or Maryland. (Owen Decl., Exs. 2 & 3; Complaint, ¶ 11.)

The SAD submit the declaration of Linda Taetz, who is Chief Compliance Officer for Mariner Central, and President of the various SNF (except for Fruitvale Long Term Care). (Taetz Decl., ¶¶ 1, 2.)

Mariner Central is a consulting company that provides administrative, operational, and clinical support services to the SNF. (Taetz Decl., ¶ 1.) Skilled nursing facilities receiving support services from Mariner Central do not require approval from the SAD, and Taetz does not rely upon the opinions of the SAD in performing duties for the SNF or Mariner Central. (Taetz Decl., ¶ 4.)

Clinical operations of the SNF are not discussed with the SAD, and the SAD do not provide directive on operations or staffing of the SNF. (Taetz Decl., ¶¶ 5, 6.) Specifically, Taetz declares that reports regarding (1) patient and/or resident complaints from the SNF; (2) hiring, firing, or staffing of the SNF; and (3) policies and procedures of the SNF are not provided to the SAD. (Taetz Decl., ¶ 7.)

The SAD also submit the declaration of Kenneth Tabler, President of Mariner Central as well as an officer and director of the SAD. (Tabler Decl., ¶ 1.) SAD Mariner Health Care Management Company acts solely as a holding company and neither SAD National Senior Care, Inc. nor Mariner Health Care Management Company provide services directly to Mariner Central or the SNF. (Tabler Decl., ¶¶ 6, 7.)

E. The People's Jurisdictional Evidence

For their part, the People submit the depositions of Tabler, Owen, and Taetz. (Allen Decl., Exs. A, B, C.) SAD National Senior Care, Inc. has a single shareholder, which is currently Emily Grunstein. (Allen Decl., Ex. A [Tabler Depo.], at 17:25-18:5.) National Senior Care, Inc. has no income, and its lease is paid by Mariner Central. (Id., at 20:2-17.) SAD Mariner Health Care, Inc. has two officers: Tabler and Devin Ehrlich. (Id., at 22:3-9.) The SAD all share an office in Georgia. (Id., at 23:4-6.)

Mariner Central provides, and derives income from providing, administrative functions for the California-based SNF. (Allen Decl., Ex. A, 27:9-13; Allen Decl., Ex. B [Owen Decl.], at 27:20-23.) Mariner Central has several officers, including Tabler and Ehrlich. (Id., at 28:22-25.) Mariner Central pays Grunstein's salary. (Id., at 29:15-29.)

LEGAL FRAMEWORK

Upon the filing of a motion to quash, the plaintiff bears the burden of establishing the facts justifying the exercise of jurisdiction by a preponderance of the evidence. (CenterPoint Entergy, Inc. v. Superior Court (2007) 157 Cal.App.4th 1101, 1118, citing Aquila, Inc. v. Superior Court

(2007) 148 Cal.App.4th 556, 568.) This may be accomplished through declarations offering specific evidentiary facts permitting a court to form an independent conclusion regarding jurisdiction. (Ibid.) If plaintiffs make a sufficient showing, then the burden shifts to the defendant to present a compelling case demonstrating that the exercise of jurisdiction would be unreasonable. (Ibid.)

DISCUSSION

"California's long-arm statute authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California." (Vons Companies, Inc. v. Seabest Foods, Inc. (1996) 14 Cal.4th 434, 444, citing Code Civ. Proc., § 410.10.)

"Personal jurisdiction may be either general or specific." (Vons Companies, Inc., supra, at p. 445.)

A. General Personal Jurisdiction

The paradigm for general jurisdiction is the defendant's domicile. (Bristol-Myers Squibb Co. v. Superior Court (2017) 137 S.Ct. 1773, 1780 ("BMS"), quoting Goodyear Dunlop Tires Operations, S.A., v. Brown (2011) 564 U.S. 915, 924.) For a corporation, domicile is the entity's place of incorporation and principal place of business, or where "the corporation is fairly regarded as at home." (Daimler AG v. Bauman (2014) 571 U.S. 117, 137; BMS, at p. 1780.)

In other words, "[a] nonresident defendant may be subject to the general jurisdiction of the forum if his or her contacts in the forum state are 'substantial… continuous and systematic.'" (Vons Companies, Inc., supra, 14 Cal.4th at p. 445, quoting Perkins v. Benguet Mining Co. (1952) 342 U.S. 437, 445, 446.) Courts consider whether the defendant challenging jurisdiction maintains offices, has employees, uses bank accounts, and/or markets or sells products in the forum state. (F. Hoffman-La Roche, Ltd. v. Superior Court (2005) 130 Cal.App.4th 782, 796.)

Here, it is undisputed that SAD are Delaware corporations with principal places of business in Georgia and Maryland. (Owen Decl., ¶ 3; Complaint, ¶¶ 8-10.) Further, the SAD have never been registered to conduct business in California and never maintained offices in California. (Owen Decl., ¶¶ 6-8.) Moreover, as holding companies, the SAD do not have any employees, do not provide healthcare services to any individual in California, and do not directly own or operate any skilled nursing facility within California. (Owen Decl., ¶¶ 3-5, 11; see also Tabler Decl., ¶¶ 5-12.)

The People do not dispute that "none of the moving parties are technically 'domiciled' in California," but argue that since 2006 "all of their business activities are conducted in California." (Opposition, at p. 11.) The People cite the deposition of Kenneth Tabler, which states that the SAD are holding companies without any business activities. (Allen Decl., Ex. A, 34:20-37:2.)

"[E]ven if a defendant lacks sufficient direct contacts with a forum to establish general jurisdiction, a plaintiff may impute the minimum contacts of a California subsidiary to a

nonresident parent through theories of alter ego or agency." (Strasner v. Touchstone Wireless Repair & Logistics, LP (2016) 5 Cal.App.5th 215, 223.) "[F]or purposes of jurisdiction, the analysis begins with the 'firm proposition that neither ownership nor control of a subsidiary corporation by a foreign parent corporation, without more, subjects the parent to the jurisdiction of the state where the subsidiary does business.'" (F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 797, quoting Sonora Diamond Corp. v. Superior Court (2000) 83 Cal.App.4th 523, 540.) Thus, "a plaintiff must demonstrate that the parent 'exercised pervasive and continuous control over [the subsidiary's] day-to-day operations that went beyond the normal parent-subsidiary relationship.'" (Strasner, supra, at p. 223, quoting BBA Aviation PLC v. Superior Court (2010) 190 Cal.App.4th 421, 433.)

Here, the People offer no evidence that the SAD, in fact, exercised control, management, or oversight of any California-based entity that would be tantamount to ownership of the SNF. Rather, they suggest that a few people control the SAD. (Opposition, at p. 5 ["They [the SAD] operate through the same two officers and directors, Kenneth Tabler and attorney Devin Erlich."].) Even accepting this as true, arguendo, it does not establish that the SAD engaged in sufficient contacts with the State of California to justify the exercise of jurisdiction, because the SAD engaged primarily (if not exclusively) with Mariner Central, which is neither based in California nor contesting jurisdiction.

Conversely, the SAD offer evidence that they did not exercise direct control over the California-based SNF. (See, e.g., Tabler Decl., ¶¶ 5-8; Taetz Decl., ¶¶ 4-7.) Mariner Central provides administrative, operational, and clinical support services to the SNF. (Taetz Decl., ¶ 1.) Thus, none of the SADs provide services directly to the SNF, or Mariner Central. (Tabler Decl., ¶¶ 5-8.)

In turn, none of the facilities receiving services from Mariner Central require approval from the SAD regarding the performance of their clinical operations, nor do the SAD provide directives on how to operate the SNF. (Taetz Decl., ¶¶ 4, 5.) The SAD do not receive information about clinical operations of the SNF, which means the SAD do not receive information regarding patient or resident complaints, hiring, firing or staffing at the SNF, or policies and procedures for the SNF from Mariner Central. (Taetz Decl., ¶¶ 6, 7.)

The People also argue that "[t]he singular and exclusive business of all three of the [SAD] is to conduct the business of skilled nursing in California." (Opposition, at p. 5.) The SAD are all holding companies. (Owen Decl., ¶ 3.) Thus, to the extent the SAD exercise control over Mariner Central, which itself is not a California-based entity, that too would be insufficient to provide a basis for exercising jurisdiction. (Sonora Diamond Corp., supra, 83 Cal.App.4th at p. 543 ["The [representative services] doctrine supports the exercise of jurisdiction when the local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's own business, but the doctrine does not support jurisdiction where the parent is merely a holding company whose only business pursuit is the investment in the subsidiary."].)

Therefore, the court concludes that there is no basis for the exercise of general personal jurisdiction over the Specially Appearing Defendants.

B. Specific Personal Jurisdiction

"In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" (BMS, supra, 137 S.Ct. at p. 1780, quoting Daimler AG, supra, 571 U.S. at p. 127.) The inquiry focuses on the relationship between the defendant, the forum, and the litigation. (Walden v. Fiore (2014) 571 U.S. 277, 283-84.) Thus, exercise of specific jurisdiction requires that (1) the defendant purposefully availed itself to forum benefits, or directed activities at residents of the forum; (2) the litigation results from alleged injuries that arise out of or relate to those activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. (Burger King Corp. v. Rudzewics (1985) 471 U.S. 462, 472-73; see also Shisler v. Sanfer Sports Cars, Inc. (2006) 146 Cal.App.4th 1254, 1259.)

As demonstrated above, the SAD are incorporated under the laws of the State of Delaware and with principal places of business within the State of Georgia (and/or Maryland). (Owen Decl., ¶ 3.) Further, the SAD are holding companies, which do not participate in the day-to-day management or operations of the California-based SNF. (Owen Decl., ¶¶ 3, 5, 9, 11.)

Here, the People argue the SAD purposeful availed themselves to California benefits because their "core business, indeed their only business" is the operation of the California-based SNF. (Opposition, at p. 12.) The People argue that National Senior Care is individually owned by Emily Grunstein, who in turn has the power to hire and fire the President of the SAD (i.e., Tabler) and President of Mariner Central. (Tabler Depo., 13:22-14:13.) Further, the People argue that Mariner Central's Chief Compliance Officer can hire and fire administrators and management of the individual SNF. (Allen Decl., Ex. C. ["Taetz Depo."], at 14:4-9.)

The court finds this insufficient to carry the People's moving burden. As an initial matter, Mariner Central does not challenge the court's exercise of jurisdiction over it. (Taetz Decl., ¶ 1; Tabler Decl., ¶ 2.) Thus, Mariner Central's forum-based activities (i.e., the ability to hire and fire individuals at the SNF) are not relevant to the court's analysis regarding specific jurisdiction. (Walden, supra, 571 U.S. at p. 284 ["First, the relationship must arise out of contacts that the 'defendant himself' creates within the forum State."].) Even so, to the extent the SAD exercise control over Mariner Central, it is a Delaware corporation. (Owens Decl., Ex. 2; see also Complaint, ¶ 11.) Therefore, the SAD's exercise control over Mariner Central does not give rise to in-forum activities.

The People cite two cases—Sacramento Suncreek Apartments, LLC v. Cambridge Advantaged Properties II, LP (2010) 187 Cal.App.4th 1 and In re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litig. (D. Mass. 2015) 76 F.Supp.3d 321—in support of their argument that an out-of-state entity cannot create a "complicated corporate structure run by a few people" to avoid jurisdiction. (Opposition, at p. 13; see also id., at p. 12.) The court finds the authority distinguishable.

The People rely upon a federal district court order cited in Sacramento Suncreek Apartments, which found that California-based individuals investing in a Delaware limited partnership with a principal place of business in Pennsylvania was sufficient to allow a Pennsylvania court to exercise jurisdiction over the California-based defendants. (Sacramento Suncreek Apartments, LLC, supra, 187 Cal.App.4th at p. 17, citing Morgan Guar. Trust Co. v. Blacksburg Associates,

L.P. (E.D. Pa., Dec. 13, 1990, No. CIV. A. 90-6076) 1990 WL 209297.)

Here, the People establish, at best, that Grunstein is the sole owner of National Senior Care, Inc., which is a Delaware corporation with a principal place of business in Georgia. However, the court is not concerned with Grunstein, who is not a named defendant. To the extent the People argue that, by analogy, the SAD are subject to California jurisdiction as the ultimate parent of the California-based SNF, that argument takes an overly broad reading of Morgan Guarantee Trust Co. and would require the court to disregard the corporate form without a basis to do so. In any event, the evidence establishes that the SAD did not directly engage with the SNF; rather, their direct interactions were limited to Mariner Central, which does not challenge jurisdiction.

Lastly, as SAD note in reply, Sacramento Suncreek Apartments affirmed the trial court's order quashing service and dismissing the complaint. (Sacramento Suncreek Apartments, supra, 187 Cal.App.4th at 23.) There, the court determined it lacked a basis to exercise jurisdiction over a foreign limited partnership, which was made up of approximately 3,000 limited partners and one foreign general partner. (Id., at p. 6.) The limited partnership—through other limited partnerships—owned and operated apartment complexes, including one in Sacramento, California. (Ibid.) Except for the Sacramento property, the limited partnership owned no other California property, had offices and personnel in New York, and conducted no other business in California. (Ibid.) The court found this insufficient to exercise specific personal jurisdiction over limited partnership in a lawsuit where plaintiffs were forced to vacate the Sacramento complex due to mold. (Id., at p. 7.) Therefore, Sacramento Suncreek supports a finding that the SAD's conduct is insufficient to establish specific jurisdiction.

Similarly, the People cite In re Fresenius Granuflo, which procedurally was a motion to remand, where the defendant bears the burden of establishing jurisdiction. (In re Fresenius Granuflo, supra,76 F.Supp.3d at p. 327.) Moreover, the cited portion of In re Fresenius Granuflo considered the responsible corporate officer doctrine, "which is a distinct ground for liability from… 'piercing the corporate veil'…" (Id., at p. 337.) The same is true of People v. Roscoe (2008) 169 Cal.App.4th 829, 836, and People v. Toomey (1984) 157 Cal.App.3d 1, 15.

Here, the responsible corporate officer doctrine does not apply because, as noted above, there are no individual corporate officers named as defendants. To the extent the People seek to apply the doctrine to chain of parent-subsidiary entities, the expansion of the doctrine is neither supported by law or the facts presented here. (See, e.g., Taetz Decl., ¶¶ 3-7.)

Therefore, the court concludes that there is no basis for the court to exercise specific personal jurisdiction over the Specially Appearing Defendants.

C. Alter Ego, Agency, and Conspiracy Theories

The SAD present argument that allegations regarding alter-ego, agency, and conspiracy fail to provide a basis for this court's exercise of jurisdiction. In opposition, the People concede "that is not an argument being made by the People" at this time. (Opposition, at p. 14.)

While the People currently disavow the agency and alter ego theories, their argument regarding general and specific jurisdiction contains a flavor of these arguments. Put differently, the

argument that the "core" business of the SAD is conducted through "a conglomerate of businesses exclusively in California," is another way of arguing that the corporate formalities of the various intermediary organizations should be disregarded.

The exercise of jurisdiction over a subsidiary (i.e., the California-based SNF) may give rise to jurisdiction over a parent entity if the elements of alter ego or principal/agent theories are present. (Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc. (2002) 99 Cal.App.4th 228, 244, citing Sonora Diamond Corp., supra, 83 Cal.App.4th at pp. 536-37.) The alter ego theory requires a "unity of interest and ownership" between the domestic and foreign entities such that the "separate personalities…do not in reality exist." (Id., at p. 245, quoting Sonora Diamond Corp., supra, at p. 538.) Factors considered include inter alia inadequate capitalization, commingling of funds, holding out of one entity as liable for the debts of another, identical equitable ownership, use of the same offices and employees, overlap of officers and directors, and other disregard for corporate formalities. (Ibid.)

Here, the People have established, at best, overlap in offices, officers, and arguably equitable ownership; however, more is required and, "even if the unity of interest and ownership element is shown, alter ego will not be applied absent evidence that an injustice would result…" (Virtualmagic Asia, Inc., supra, at p. 245.) Here, Mariner Central consents to jurisdiction and there is no evidence that any of the individual SNF or Mariner Central would be unable to answer any judgment in this action.

The principal/agency theory requires a showing that the parent exercises sufficient control over the subsidiary that it "can be described as a means through which the parent acts, or is nothing more than an incorporated department of the parent." (Virtualmagic Asia, Inc., supra, at p. 245.)

Again, the evidence presented here does not demonstrate a sufficient degree of control. None of the facilities receiving services from Mariner Central require approval from the SAD regarding the performance of their clinical operations, nor do the SAD provide directives on how to operate the SNF. (Taetz Decl., ¶¶ 4, 5.) The SAD do not receive information about clinical operations of the SNF, which means the SAD do not receive information regarding patient or resident complaints, hiring, firing or staffing at the SNF, or policies and procedures for the SNF from Mariner Central. (Taetz Decl., ¶¶ 6, 7.)

Ultimately, the record before the court does not provide a sufficient basis for this court to exercise personal jurisdiction—general or specific—over the Specially Appearing Mariner Defendants.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

Dated: 07/22/2022

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

*[signature]*

Brad Seligman / Judge