UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MARINER HEALTH CENTRAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10877 (LSS)<br>(Jointly Administered)<br><br>Related Dkt. Nos. 7, 1, 27, 35, 45, 66<br><br>**Hearing Date:  October 25, 2022 at 11:00 a.m.**<br>**Objections Due:  October 18, 2022 at 4:00 pm** |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' RESPONSE
TO (I) MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS AUTHORIZING
DEBTORS TO CONTINUE USE OF EXISTING BANK ACCOUNTS,
CASH MANAGEMENT SYSTEM AND BUSINESS FORMS, AND
<u>GRANTING RELATED RELIEF AND (II) PROPOSED BUDGETS</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") hereby responds to the *Motion of Debtors for Interim and Final Orders Authorizing Debtors to Continue Use of Existing Bank Accounts, Cash Management System And Business Forms, And Granting Related Relie*f [D.I. 7] (the "<u>Cash Management Motion</u>").  In support of the relief sought herein, the Committee states as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.      The Committee, formed on October 7, 2022, retained counsel on October 11, 2022 and a financial advisor on October 14, 2022.  The Committee's statutory mandate, and its fiduciary obligation, is to act on behalf of all unsecured creditors, and to maximize the value of the Debtors' estates for those creditors.  The Committee fully understands its duty, and takes its obligations to all general unsecured creditors seriously.

---

[1]   The Debtors, along with the last four digits of each Debtor's tax identification number, are Mariner Health Central, Inc. (6203), Parkview Holding Company GP, LLC (1536), and Parkview Operating Company, LP (7273). The Debtors' headquarters are located at 3060 Mercer University Drive, Suite 200, Atlanta, GA 30341.

1

2. The reasons that the Debtors filed for bankruptcy, their decision to file in the District of Delaware, their effort to extend the protections of bankruptcy to their non-debtor affiliates, together with the questions raised at the First Day Hearing relating to pre-petition cash flows and transactions, affect *all* general unsecured creditors. While the Interim Order entered by this Court set a cap on outgoing intercompany transfers from the Debtors to their non-debtor affiliates, the Debtors' proposed final order does not. The Committee has not yet had the opportunity to examine the cash management arrangements and intercompany transactions that took place prior to these Chapter 11 cases, nor to examine in detail the Debtors' proposed budgets. Bankruptcy requires transparency on the part of the Debtors. The Committee does not wish to disrupt the ordinary business operations of the Debtors and their non-debtor affiliates while it fulfills its statutory mandate and conducts its review and investigation. Accordingly, the Committee seeks limited relief set forth herein in order to preserve the status quo.

## RESPONSE

3. Prior to the Petition Date, the Debtors were obligors with other Mariner Companies[2] on two revolving credit facilities (the "Capital One Facilities") with Capital One, N.A. ("Capital One"), as agent and lender. *See* Perkins Declaration at 8. In anticipation of these Chapter 11 cases, the Debtors' advisors negotiated their release from the Capital One Facilities. *Id.* Prior to the release of the Debtors from those obligations, the Debtors' accounts were part of a cash flow system together with the other Mariner entities that are obligors to Capital One. *See Transcript of September 21, 2022 Hearing* (the "First Day Transcript"), at 16:13-21. Thereafter, the Debtors

---

[2] Capitalized terms used herein without definition shall have the meanings assigned in the Cash Management Motion or the Declaration Of Lawrence Perkins In Support Of Chapter 11 Petitions And First Day Pleadings [D.I. 12] (the "Perkins Declaration"), as applicable.

25886608-v4

restructured their cash management system, so as to decouple those accounts from others in the Mariner enterprise.  *Id.*

4.      The Debtors filed a proposed 13-week budget together with the Perkins Declaration.  *See* Perkins Decl., Ex. B.  Thereafter, the Debtors filed a revised budget.  *See* Notice of Revised Budget [D.I. 27] on September 21, 2022.

5.      On September 21, 2022, this Court held a hearing on the Debtors' requested "first day" relief (the "First Day Hearing"), including the Cash Management Motion.

6.      At the hearing, counsel to the Debtors noted their agreement with the Office of the United States Trustee to limit on an interim basis any post-petition intercompany transfers from the Debtors to their non-debtor affiliates to an aggregate of $60,000 during the interim period.  *See* First Day Transcript, at 54:11-12 (noting the United States' Trustee's request for a cap on intercompany transfers).  Debtors' counsel represented at the First Day Hearing that any outbound cash would be applied to post-petition payables due and owing to non-debtor affiliate Bio-Pacific LLC.  *Id.* at 53:8-54:4; *see also* Perkins Declaration, at 13 (describing contractual relationship pursuant to which Bio-Pacific LLC provides physical therapy and rehabilitation services at the Parkview Facility).

7.      At the First Day Hearing, Jennifer Fiore,[3] counsel to certain of the plaintiffs in the *Ledesma* and certain other actions, raised concerns with respect to the Debtors' accounts that allegedly were uncovered in connection with the damages phase of the *Ledesma* action, including an alleged transfer of significant cash belonging to Debtor Mariner Health Central, Inc., and violations of a California state court order.  *See* First Day Transcript, 54:20-56:6; 59:1-60:3.  Debtors' counsel disputed any irregularities with respect to the Debtors' accounts and pre-petition

---

[3] Ms. Fiore's client, Lisa Cabrera, is one of the *Ledesma* plaintiffs and sits on the Committee.

3

25886608-v4

intracompany cash flows, and noted in response to further questions from the Court that the Debtors' accounting would become apparent when their schedules are filed. *Id.*, 57:21-58:1.

8. Ultimately, the Court approved the Cash Management Motion on an interim basis, limiting intercompany payments by the Debtors to non-debtor affiliates to the agreed aggregate of $60,000, subject to entry of a final order. *See Interim Order Authorizing the Debtors to Continue Use of Existing Bank Accounts, Cash Management System and Business Forms, and Granting Related Relief* [D.I. 35] (the "Interim Cash Management Order"), at ¶ 12. In approving the relief, the Court expressly stated that she was not blessing any impropriety that may exist with respect to prepetition transactions, and that any issue should be brought before Your Honor to be sorted out. First Day Transcript at 60:24-61:3. The Court further noted the importance and propriety of the $60,000 cap, as well as the setting up of separate accounts. *See id.* at 61:7-62:3 (stating further that the interim relief would be revisited, "[a]nd in the meantime, if there are issues that need to be explored, they can be explored"). The Court also requested that the Debtors file disaggregated proposed budgets for each Debtor. *See id.* at 77:1-6. The Debtors filed those budgets on October 3, 2022. *See* Notice of Disaggregated and Updated Budgets [D.I. 66].[4]

9. To date, the recently-formed Committee has not had the opportunity to undertake the exploration referenced by the Court. While the Committee has reached out to the Debtors to request the information their advisors will require to conduct their diligence and investigation, the Committee's advisors have not yet been provided even the most cursory diligence to allow the

---

[4] Each of the proposed budgets includes a line item for salary and wage expenses. *See* D.I. 66-1, 66-2, 66-3. At the First Day Hearing, in response to concerns raised by Santa Cruz County Assistant District Attorney Douglas Allen and Ms. Fiore in connection with *the Motion of Debtors for Entry of Interim and Final Orders Authorizing Payment of Certain Prepetition Employee-Related Claims and Granting Related Relief* [D.I. 8], the Debtors agreed that no salary would be payable to Emily Grunstein, an equity holder in the Debtors. *See* First Day Transcript, at 63:19-65:7. To the extent the Debtors seek to pay a salary to Ms. Grunstein during these Chapter 11 cases, the Committee reserves its right to be heard.

Committee to examine the Debtors' proposed budgets, the Mariner Companies' pre-petition cash management system, or the transactions that flowed through the accounts prior to their pre-petition restructuring. Upon information and belief, at least certain of the information underlying the concerns raised by plaintiffs' counsel at the First Day Hearing is confidential, and cannot, without the Debtors' authorization, be shared with the Committee.[5] The Debtors filed their Schedules of Assets and Liabilities and Statements of Financial Affairs just after midnight on October 18, 2022, timing that prohibits the Committee from being able to conduct any meaningful review given the October 18 deadline to respond to the Cash Management Motion.

10. The Debtors' proposed form of final order approving the Cash Management Motion does not include any limitation on post-petition intercompany transfers from the Debtors to their non-debtor affiliates. The Committee needs further time to understand both the Debtors' proposed budgets, and the pre-petition cash management system and intercompany cash flows underlying the concerns raised at the First Day Hearing. The Committee notes that it is struck by, on the one hand, the efforts by the Debtors to obtain extraordinary stay extensions and injunctive relief on behalf of their non-debtor affiliates,[6] and the apparent desire, on the other hand, to keep those entities out of these chapter 11 cases, and outside the supervision of this Court, while allowing those same entities unfettered access to the Debtors.

---

[5] The Committee contacted the Debtors by e-mail dated October 15, 2022 to request the relevant information. As of this filing, the Debtors have not responded.

[6] *See generally Mariner Health Central, Inc. et al. v. Arzeta, et al.*, Adv. No. 22-50418, *Mariner Health Central, et al. v. United States of America ex rel. Integra Med Analytics LLC*, Adv. No. 22-50419, and *Mariner Health Central, Inc., et al. v. People of the State of California*, Adv. No. 22-50420; *see also Motion of the Debtors for an Order Extending the Automatic Stay, or in the Alternative, Granting Injunctive Relief, to Stay Prosecution of the Integra Action Against Non-Debtor Affiliates* [D.I. 70, Adv. No. 22-50419 D.I. 3], *Motion of the Debtors for an Order Extending the Automatic Stay, or in the Alternative, Granting Injunctive Relief, to Stay Prosecution of Certain Actions Against Non-Debtor Affiliates* [D.I. 72, Adv. No. 22-50418 D.I. 3], and their *Motion of the Debtors for an Order Granting Injunctive Relief and Enjoining Prosecution of the PSC Action* [D.I. 74, Adv. No. 22-50420 D.I. 3].

5

11. The Committee's advisors are prepared to work with the Debtors' advisors to promptly and efficiently understand the pre-petition cash management system among the Debtors and their non-debtor affiliates, including the inward and outward flows of intercompany transfers, to identify any issues or discrepancies, including any property of the estates that may have been transferred pre-petition.

12. Pending the Committee's review of the Debtors' proposed budgets and the enterprise-wide pre-petition cash management system (including intercompany transfers), the Committee believes the Court should continue to limit the amount of cash leaving the Debtors' estates for intercompany obligations. Specifically, the Committee believes it would be appropriate for this Court either (i) to continue approval of the Debtors' cash management on the interim basis set forth in the Interim Cash Management Order pending the opportunity of the Committee to complete its investigation; or (ii) to include in a final order approving the Cash Management Motion a cap and other appropriate limitations on the Debtors' ability make post-petition transfers to their non-debtor affiliates, including without limitation conditioning those transfers on the prior approval of the Committee. The Committee is open to discussing such limitations with the Debtors and their advisors and other parties in interest in advance of the hearing currently schedule for October 25, 2022.

**WHEREFORE**, the Committee respectfully requests that the Court either (i)(x) continue approval of the Debtors' cash management on the interim basis set forth in the Interim Cash Management Order pending the opportunity of the Committee to complete its investigation; or (y) include in any final order approving the Cash Management Motion a cap and/or other appropriate limitations on the Debtors' ability make post-petition transfers to their non-debtor affiliates; and (ii) enter such other relief as the Court believes is reasonable and appropriate.

Respectfully submitted,

Dated:  October 18, 2022
Wilmington, Delaware

**ROBINSON & COLE LLP**

*/s/ Jamie L. Edmonson*
Natalie D. Ramsey (No. 5378)
Jamie L. Edmonson (No. 4247)
1201 North Market Street, Suite 1406
Wilmington, Delaware  19801
Telephone:  (302) 516-1700
Facsimile:  (302) 516-1699
nramsey@rc.com
jedmonson@rc.com

and

Rachel Jaffe Mauceri (*pro hac vice*)
1650 Market Street, Suite 3030
Philadelphia, Pennsylvania  19103
Telephone:  (215) 398-0556
rmauceri@rc.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of Mariner Health Central Inc., et al.*

7

25886608-v4