## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>MARINER HEALTH CENTRAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10877 (LSS)<br><br>(Jointly Administered)<br><br>Related Dkt. Nos. 76, 80<br><br>**Hearing:  October 25, 2022 at 1:00 p.m.**<br>**Objections Due:  TBD** |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION AND JOINDER TO TRANSFER VENUE OF THE DEBTORS' CHAPTER 11 CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION AND JOINDER TO

The Official Committee of Unsecured Creditors (the "Committee") hereby moves for entry of an order transferring venue of the Debtors' chapter 11 cases, including the related adversary proceedings, (the "Motion and Joinder") to the United States Bankruptcy Court for the Northern District of California, Oakland Division (the "USBCND").[2]  In support of the Motion and Joinder, the Committee states as follows:

### PRELIMINARY STATEMENT

*1.*      The Debtors filed an incendiary Response [D.I. 108] (the "Response") to the Committee's motion seeking to shorten notice (the "Motion to Shorten") filed with respect to the Committee's *Motion to Continue Hearing On Motions Of The Debtors For An Order Extending The Automatic Stay, Or In The Alternative Granting Injunctive Relief, To Stay Prosecution Of*

---

[1]    The Debtors, along with the last four digits of each Debtor's tax identification number, are Mariner Health Central, Inc. (6203), Parkview Holding Company GP, LLC (1536), and Parkview Operating Company, LP (7273). The Debtors' headquarters are located at 3060 Mercer University Drive, Suite 200, Atlanta, GA 30341.

[2]    The Committee also joins in the *Motion to Transfer Venue of Bankruptcy Cases to the United States Bankruptcy Court for the Northern District of California, Oakland Division* [D.I. 76] filed by the Ledesma Action Plaintiffs on October 5, 2022.

*Certain Actions Against Non-Debtor Affiliates* [D.I. 96; AP 22-50418 D.I. 7; AP 22-50419 D.I. 10; AP 22-50420 D.I. 8] (the "Motion to Continue").  In it the Debtors have accused the newly-formed Committee of carrying the water for the litigation plaintiffs in these cases.  The Committee and its advisors are acutely aware of their fiduciary obligations to the Debtors' estates and to *every* general unsecured creditor, and each objects to the Debtors' character assassination and vehemently denies the Debtors' allegations.

2.      The Committee requested an adjournment of the PI Motions as soon as possible following the selection of Committee counsel, during the first telephone call between the Debtors' and the Committee's respective legal advisors.[3]  The Debtors declined to grant an adjournment. On Monday, October 17, the day before the objection deadline with respect to the PI Motions, the Debtors offered a horse trade: they would adjourn the PI Motions if the Committee would agree to adjourn the Venue Motion.  But the PI Motions and the Venue Motion are apples and oranges. Notwithstanding the Committee's assertions, the analysis required for the Committee to arrive at a view on the appropriate venue for these cases is far more straightforward than the extensive discovery required to analyze three separate preliminary injunctive motions – one seeking relief with respect to 19 separate lawsuits – and the suggestion that the Debtors should be granted preliminary injunctive relief on a summary basis based on an incomplete record, without even a cursory investigation, is disingenuous. [4]

3.      By the time the Debtors reached out on October 17, the Committee had analyzed the straightforward facts underlying the question of venue, as well as applicable precedent, and

---

[3] The Committee disputes the Debtors' contention that the Committee sought an adjournment of the *Ledesma* lift stay motion.  The *Ledesma* plaintiffs are competently represented by their own counsel, and the Committee has not taken a position with respect to that motion.

[4] In any event, in seeking the relief set forth in the PI Motions, the Debtors have failed to comply with Rule 7001-1(a) of the Local Rules for the United States Bankruptcy Court for the District of Delaware, which govern any deviation from the rules governing adversary proceedings.

reached its own determination with respect to venue, based both on the facts of this case, and on the likelihood . With respect to the PI Motions, however, the Committee could only analyze the few data points made available in the Debtors' pleadings. The reference to, but absence of, other evidence in support of stay extensions and injunctive relief forced the Committee to conclude that the Debtors' papers alone did not meet their burden. That is not an unusual circumstance: a request for preliminary injunctive relief – properly commenced as an adversary proceeding and subject to the applicable rules – generally is followed by a discovery and briefing schedule. The legal determination of venue is simply of a different nature.

4.      Here, the fact that venue is legally permissible in a particular jurisdiction does not mean it is appropriate. Debtor Parkview Operating Company ("Parkview") is located in the San Francisco Bay Area, and all of the skilled nursing facilities within the Mariner enterprise are located in California. Significantly all of Parkview's employees are there. The Debtors' proposed health care ombudsman is located there. A majority of the Debtors' non-affiliated creditors are located in California, along with a majority of the Committee's membership. The extensive litigation proceeding these chapter 11 cases is entirely California-based: (i) the *Ledesma* action, (ii) the various "Covered Actions" described in the Debtors' motion seeking extension of the stay and injunctive relief; (iii) the *Integra* Action; and (iv) the *PSC* Action. The Debtors' CRO is also California-based, and both of Debtors' bankruptcy counsel maintain offices there.

5.      That the Debtors and their Non-Debtor Affiliates are Delaware entities is not a sufficient basis for keeping these cases in Delaware. While certain intercompany issues, to the extent they are brought before a court, may require application of Delaware law, they need not be decided by a Delaware-based judge – Delaware law is regularly applied in a variety of courts around the country. Indeed, the Debtors – and perhaps their Non-Debtor Affiliates – appear to be

the only parties-in-interest that believe Delaware is the proper venue for this case to proceed.  The

deference normally shown to the venue choice of a chapter 11 debtor should not apply here because

this Court does not exist for the Debtors', their insider affiliates', or their advisors' pleasure.

6.      Accordingly, as set forth in the Venue Motion and in certain of the pleadings joining

the arguments set forth therein as described *infra*, the Committee agrees that this Court should

transfer the Debtors' cases, including the pending adversary proceedings, to the Bankruptcy Court

for the Northern District of California, Oakland Division.

## BACKGROUND AND RELEVANT FACTS

7.      On September 19, 2022 (the "Petition Date"), the Debtors commenced these cases

by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. [5]

8.      Prior to the Petition Date, the Debtors, together with certain non-debtor affiliates,

were named as defendants in approximately 20 lawsuits in multiple state and federal courts, all

located in California courts, that are at various stages, ranging from initial pleadings to the post-

judgment appellate phase.

9.      Debtor Parkview is one of 20 skilled nursing facilities within the Mariner

enterprise, each of which is located in California.

10.      On October 5, 2022, certain individuals, including the *Ledesma* plaintiffs, filed the

*Motion to Transfer Venue of Bankruptcy Cases to the United States Bankruptcy Court for the*

*Northern District of California* [D.I. 76] (the "Venue Motion").  On October 6, 2022, the State of

California filed its *Joinder by the State of California in Support of the Motion of the Ledesma*

---

[5] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Declaration of Lawrence Perkins in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 12] (the "Perkins Declaration").

*Action Plaintiffs to Transfer Venue of Affiliated Chapter 11 Bankruptcy Case to the United States Bankruptcy Court for the Northern District of California* [D.I. 80] (the "California Joinder").

11.     On October 7, 2022, the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee, which comprises seven members:  (i) James Cearly Jr., by and through his Guardian *ad litem*, Sandra Cearly; (ii) Lisa Cabrera, Individually, as Successor in Interest of Louie Sira and as Personal Representative of the Estate of Louie Sira; (iii) Nancy Sanchez, as Successor in Interest and on behalf of the Estate of Jose Sanchez; (iv) Ronald Berinstein as Power of Attorney for Margo L.; (v) Scott Cook; (vi) Integra Med Analytics, LLC; and (vii) Skypower Secure Solutions, Inc. *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83].  Six of the members of the Committee are plaintiffs in California-based litigation against the Debtors, and the seventh Committee member is a California-based business that provides security services to Parkview.  *Id.*

12.     The Committee selected proposed counsel on October 11, 2022 and selected a financial advisor on October 14, 2022.  One of the Committee's proposed lead attorneys on these matters is a California-barred attorney who is admitted to the Northern District of California, and at least one member of the Committee's proposed financial advisory team is California-based. Committee counsel also maintains an office in California.[6]

13.     The Debtors' proposed lead bankruptcy counsel are based in New York and California, respectively, and their proposed local counsel also has California offices.  The offices of the Debtors' proposed CRO is also based in California.

---

.

## JURISDICTION

14.     This Court has jurisdiction over the Motion and Joinder pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. 157(b).  The statutory predicates for the relief sought herein are Sections 1404, 1408 and 1412 of Title 28 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 1014 (the "Bankruptcy Rules").

## RELIEF REQUESTED

15.     By this Motion and Joinder, the Committee seeks entry of an order of this Court, substantially in the form attached as Exhibit A, transferring these cases, together with the related adversary proceedings, to the United States Bankruptcy Court for the Northern District of California, Oakland Division.

## ARGUMENT

16.     Pursuant to 28 U.S.C. § 1408(a), venue is proper in the district:

(1) in which the domicile, residence, principal place of business in the United States, or principal asset in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; . . .

17.     Even where a debtor has technically complied with § 1408, however,

for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).  In addition, a "district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.  "'It has been observed that § 1412 is . . . written in the disjunctive, making transfer of venue appropriate *either* in the interest of justice *or* for the convenience of the parties,

and that this statutory provision creates two distinct analytical bases upon which transfer of venue may be grounded.'" *In re Caesar's Entertainment Operating Company, Inc.*, 2015 WL 495259, *5 (Bankr. D. Del. Feb. 2, 2015) (*quoting In re Qualteq, Inc.*, No. 11–12572, 2012 WL 527669, at *6 (Bankr. D. Del. Feb. 16, 2012) (emphasis in original)).

18. Likewise, Bankruptcy Rule 1014(a) provides:

> (1) <u>Cases Filed in Proper District.</u> If a petition is filed in the proper district, the court, on timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district of the court determines that the transfer is in the interests of justice or for the convenience of the parties.

Fed. R. Bankr. P. 1014(a)(1).

19.     The decision to transfer venue is solely within the discretion of the bankruptcy court. *See In re Rehoboth Hospitality, LP*, 2011 WL 5024267, *3 (Bankr. D. Del. Oct. 19, 2011) (*citing In re Centennial Coal, Inc.,* 282 B.R. 140, 146 (Bankr. D. Del. 2002). While a presumption generally favors the debtor's choice of forum, that weight is "diminished when the choice of forum is not directly related to the operative, underlying facts of the case." *In re Rehoboth Hospitality, LP*, 2011 WL 5024267, *3 (*citing In re Centennial Coal, Inc.,* 282 B.R. at 144–45). The burden of proof is on the moving party requesting transfer. *See Caesar's Entertainment*, 2015 WL 495259, at *5, *In re Rehoboth Hospitality, LP*, 2011 WL 5024267, *3 (*citing Hechinger Inv. Co. of Del. v. M.G.H. Home Improvement, Inc.,* 288 B.R. 398, 402 (Bankr.D.Del.2003)).

20.     In determining whether to transfer venue of a bankruptcy case, bankruptcy courts generally take the following factors into account:[7]

---

[7] Other courts in this district have identified the factors as follows:

> (1) the location of the plaintiff and defendant;
> (2) the ease of access to the necessary proof;
> (3) the availability of subpoena power for the unwilling witnesses;
> (4) the expense related to obtaining willing witnesses;
> (5) the enforceability of any judgment rendered;

(1) the proximity of creditors of every kind to the Court;

(2) the proximity of the debtor to the Court;

(3) the proximity of the witnesses necessary to the administration of the estate;

(4) the location of the assets;

(5) the economic administration of the estate; and

(6) the necessity for ancillary administration if liquidation should result.

*See Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co.* (*In re Commonwealth Oil Refining Co.),* 596 F.2d 1239, 1247 (5th Cir. 1979); *In re Casesar's Entertainment*, 2015 WL 495259, at *5 (omitting final factor). "The consideration given the most weight is the economic and efficient administration of the estate," which requires the court to conduct the same analysis as it would for the identical factor under the interest of justice prong. *In re Dunmore Homes, Inc.,* 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008). Courts have also considered the learning curve of the court if a case transferred and the ability of interested parties to participate in the proceedings and the additional costs that might be incurred in doing so. *Id.* The various prongs are considered below.

21.    <u>The proximity of creditors.</u>  A brief review of the Debtors' creditor matrix reveals that a significant number of their creditors are California-based. *See generally* Amended Creditor Matrix [D.I. 56]. Further, the Debtors commenced these cases largely due to the burdens of extensive litigation, virtually all of which is pending before California state and federal courts, including (i) the Ledesma Action, now on appeal; (ii) each of the "Covered Actions" referenced

---

(6) the ability to receive a fair trial;
(7) the state's interest in having local controversies decided within its borders; and
(8) the economics of the estate administration.
*See In re Rehoboth Hospitality, LP*, 2011 WL 5024267, *3. (*citing In re Borden Chem.'s and Plastics Operating Limited P'ship,* 2004 WL 1887532, at *2 (*citing Hechinger,* 288 B.R. at 402–03); *Continental Airlines Inc. v. Chrysler,* 133 B.R. 585, 587–88 (Bankr.D.Del.1991)).

in the Debtors' motion and adversary complaint seek a stay extension and injunctive relief with respect to those Actions;[8] (iii) the Integra Action; and (iv) the PSC Action.  While Integra Med Analytics LLC is not a California entity, it commenced its *qui tam* suit in California, and accordingly has consented to any travel or other obligation that accompanies that suit.

22.    <u>The proximity of the Debtors to the Court.</u>  The Committee submits that it would not be difficult for the Debtors to administer these Cases before the Northern District of California. Each of the Debtors is a Delaware entity, with no other ties to Delaware.  Debtor Parkview, is located in the Bay Area.  Each of its non-affiliate skilled nursing facilities is also located in California.  Debtor Mariner Central is headquartered in Atlanta, Georgia.  Debtor Parkview Holding is a holding company with no meaningful operations of its own.  While Mariner Central provides certain administrative services, the operation of the Parkview facility occurs in Haywood, California.  Accordingly, the Committee submits that the Bankruptcy Court for the Northern District of California, Oakland Division, is a more convenient venue for employees of the Debtors located on the West Coast.  To the extent there are employees located in Atlanta who may be required to appear in court during these Chapter 11 cases, they likely would have to fly to participate in hearings in either Delaware or California.   In addition, the Debtors' lead professionals have offices in California – indeed, certain of Debtors' counsel, as well as their CEO, reside there.  Certain of the Debtors' board members reside on the West Coast as well.

23.    <u>The proximity of the witnesses necessary to the administration of the estate.</u>  To date, the Debtors have identified two declarants: Lawrence Perkins, their CRO, and Kristy Owen, the Director of Legal Affairs at Mariner.  It is not clear from Ms. Owen's declarations where she

---

[8] *See generally Mariner Health Central, Inc. et al. v. Arzeta, et al.*, Adv. No. 22-50418; *Motion of the Debtors for an Order Extending the Automatic Stay, or in the Alternative, Granting Injunctive Relief, to Stay Prosecution of Certain Actions Against Non-Debtor Affiliates* [D.I. 72, Adv. Pro. 22-50418 D.I. 3].

physically resides, but it does not appear she lives in Delaware. Mr. Perkins's offices are in Los Angeles, certainly closer to the Bay Area than to Delaware. To the extent employees of Parkview are needed, it will also be more convenient for them to travel to a court within their own state rather than one across the country. Finally, as noted in the California Joinder, these bankruptcy cases likely require the appointment of a healthcare ombudsman pursuant to section 333 of the Bankruptcy Code, who will need to be located in California. Efficiency dictates a transfer to the Northern District of California.

24.     The plaintiffs in all but one of the significant litigations pending against the Debtors are based in California. The last, Integra, has elected to be there. While these parties may not be witnesses necessary to the administration of the estate, to the extent they become necessary witnesses, a local court will be far more accessible than one that it nearly 3,000 miles away.

25.     <u>The location of the assets.</u> The Parkview operations appear to be the significant assets of these cases, and they are located in the Northern District of California. To the extent that Mariner maintains any books and records or other property of Parkview, it likely is in electronic form and easily transmittable; indeed, it likely resides on servers that can be accessed remotely, and does not require physical presence in Atlanta, and certainly not Delaware.

26.     <u>The economic administration of the estate.</u> These cases can be economically administered in the Northern District of California. The Parkview facility is in the Oakland area, together with all of its staff. As the Debtors have yet to file their Schedules of Assets and Liabilities and Statements of Financial Affairs, but based on the Debtors' creditor matrix, and the fact that the lion's share of operations take place in California, it is reasonably likely that a majority of the Debtors' significant creditors are located in California. In addition, the Committee understands

that the Debtors will need to negotiate with Parkview's landlord, which has appeared in these cases. *See Tampa Avenue Property LLC Notice of Appearance* [D.I. 58].

27.    The Debtors proposed legal and financial professionals have California offices and their CEO, a likely witness in these cases, is located there as well.  Jetting these professionals to and from Delaware is unnecessary and contributes to depletion of the estates which could otherwise use to compensate creditors..

28.    These cases are in their infancy.  To date only first day relief has been granted by the Bankruptcy Court.  It will not take long for another court to review the pleadings to date and to understand the procedural posture of these cases.  Further, as a local court, the Bankruptcy Court for the Northern District of California likely will be familiar with the applicable laws and regulations, and, as further detailed below, likely will have a meaningful interest in administering these estates.  *See*, *e.g.*, Order Granting Motion of McKesson Technologies Inc. to Transfer Venue of Affiliated Chapter 11 Bankruptcy Cases to the United States Bankruptcy Court for the Eastern District of Louisiana, *In re LMCHH LLC* (case no. 17-10201 (LSS)) [D.I. 108] (transferring chapter 11 cases and related adversary proceedings); Order Granting Motion of McKesson Medical-Surgical Inc. to Transfer Venue of Affiliated Chapter 7 Bankruptcy Cases to the United States Bankruptcy Court for the Eastern District of Arkansas, *In re Highland Arkansas Holdings, LLC* (case no. 16-11330 (LSS)) [D.I. 49] (transferring affiliated chapter 7 cases), each granting in nursing home cases motions to transfer venue to the jurisdiction where operations sat.

29.    <u>The necessity for ancillary administration if liquidation should result.</u>  The Northern District of California is well-equipped and will have an interest in administering these cases should the chapter 11 process fail.  The patients at Parkview are California residents, and their ongoing care, without disruption, will be of paramount importance in the event of a liquidation.  A local

court is well-positioned to oversee an orderly liquidation process that protects the health and well-being of Debtor Parkview's clients.

30.    <u>The state's interest in having local controversies decided within its borders.</u>  As noted above, courts may consider additional factors, such as the interest of states in having controversies decided locally.  Here, the state of California has already taken a strong interest in the operations of the Debtors and their non-debtor affiliates:  the state of California has joined the Venue Motion [D.I. 80], having previously sued certain of the Debtors and their affiliates, including Mariner and Parkview for failure to comply with applicable law.  *See Declaration of Kristy Owen in Support of Motion of the Debtors for an Order Granting Injunctive Relief and Enjoining Prosecution of the PSC Action Against Non-Debtor Affiliates* [D.I. 75, Adv. Pro. 22-50420 D.I. 4], Ex. B.  In connection with the PSC Action, the State has sought the appointment of a monitor to oversee operations at the various skilled nursing facilities.  *See id*. at 4-5.  The Ledesma Action and each of the other cases referenced the Debtors' injunctive papers is pending in California state or federal courts, and the state will have an interest in seeing the rights of these litigants vindicated.  Accordingly, the Committee submits that the state of California thus is interested in seeing the Debtors rehabilitate their businesses, and that this factor weighs heavily in favor of a transfer of venue to the Northern District of California.

31.    <u>The Debtors' Decision to File in Delaware Represents Forum Shopping.</u>  The Committee must consider the long game and the possibility of maximizing assets for the benefit of all creditors of the Debtors' estates – including to the extent those assets currently sit with non-debtor affiliates who are looking to avail themselves of the benefits of the Debtors' filing without taking on any of the burdens.  For example, Debtors' counsel – with offices in both Delaware and California – likely are aware that they are more likely to have success seeking stay relief before

the Bankruptcy Court for the District of Delaware than before the courts in California.  *See, e.g.,* *In re Midway Games, Inc.*, 428 B.R. 327, 334 (Bankr. D. Del. 2010) (holding that the automatic stay is "properly extended to actions against non-debtors where an 'identity of interest' exists between the debtor and non-debtor defendant . . . and the litigation will directly affect the debtor and, more specifically, the debtor's assets or its ability to pursue a successful plan of reorganization or liquidation under chapter 11."); *Majestic Star Casino v. City of Gary (In re Majestic Star Casino, LLC)*, No. 10-50841 (KG), 2010 WL 2540457 at *2 (Bankr. D. Del. Apr. 24, 2010) (extending the stay where the court determined that litigation threatened to divert the attention of a debtor's key personnel from the reorganization efforts).  Indeed, both of the foregoing cases are discussed extensively in the PI Motions as bases for relief from this Court.

32.    The Ninth Circuit, however, has held that, "as a general rule, the automatic stay protects only the debtor, property of the debtor or property of the estate."  *Boucher v. Shaw*, 572 F.3d 1087, 1082 (9th Cir. 2009)  Therefore, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor."); *In re Chugach Forest Prods., Inc. v. Northern Stevedoring Handling Corp (In re Chugach Forest Products, Inc.)*, 23 F.3d 241, 246 (9th Cir. 1994) (quoting *Advanced Ribbons & Office Prods. v. U.S. Interstate Distrib.*), 125 B.R. 259, 263 (B.A.P. 9th Cir. 1991).

33.    In addition, the Debtors have noted their intention to quickly file a plan in these cases.  *See* Perkins Decl. at ¶ 38.  While the Committee has not yet seen the proposed plan, to the extent it contemplates third party releases, the Debtors likely are aware that they are more likely to have confirmation in this District than the California bankruptcy court both consensual and non-consensual.  *Compare In re Mallinckrodt plc,* Case No. 20-12522-JTD (Bankr. D. Del. Feb. 3, 2022, Docket No. 6347), citing *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir.

2019), *In re Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000) ("The hallmarks of permissible non-consensual releases [are] fairness, necessity to the reorganization, and specific factual findings to support these conclusions[.]") with *In re PG&E Corporation*, 617 B.R. 671 (Bankr. N.D. Cal. 2020), quoting *Resorts Int'l v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995) (noting that the Ninth Circuit "has repeatedly held, without exception, that [section] 524(e) precludes bankruptcy courts from discharging the liabilities of nondebtors"); *In re American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir. 1989).

34.    While the Committee has deep respect for the depth of this Court's knowledge and experience, the Committee submits that given the multiple connections to California, these young cases are ripe for transfer, as they are better venued there.  Accordingly, the Committee hereby moves for a transfer of these cases to the United States Bankruptcy Court for the Northern District of California , the Committee respectfully in the Northern District, Oakland Division joins the Venue Motions, and for the reasons articulated herein and therein, hereby requests that this Court transfer this case to the United States Bankruptcy Court for the District of New Jersey.

## NO PREVIOUS RELIEF

35.    The Committee has not previously sought the relief sought herein. Contemporaneously herewith, the Committee has filed a motion to shorten notice with respect to this Motion and Joinder, seeking to have it heard by this Court on an exigent basis.

## NOTICE

36.    The Committee has served this Objection and Motion and Joinder on Debtors' counsel, the U.S. Trustee, and all parties requesting notice pursuant to Bankruptcy Rule 2002.

## **RESERVATION OF RIGHTS**

37.     The Committee expressly reserves all rights with respect to challenging the validity, propriety, jurisdiction and venue of this chapter 11 cases, including without limitation seeking to dismiss the chapter 11 cases pursuant 11 U.S.C. § 1112.

38.     The Committee reserves the right to amend or supplement this Motion and Joinder based upon any new facts or developments relating to the relief sought in the Venue Motion, the California Joinder, and herein.

**WHEREFORE**, the Committee respectfully requests that the Court (i) enter an order transferring these cases, together with the related adversary proceedings, to the United States Bankruptcy Court for the Northern District of California, Oakland Division, and (ii) enter such other relief as the Court believes is reasonable and appropriate.

Dated:  October 18, 2022
Wilmington, Delaware

**ROBINSON & COLE LLP**

*/s/ Jamie L. Edmonson*
Natalie D. Ramsey (No. 5378)
Jamie L. Edmonson (No. 4247)
1201 North Market Street, Suite 1406
Wilmington, Delaware  19801
Telephone:  (302) 516-1700
Facsimile:  (302) 516-1699
nramsey@rc.com
jedmonson@rc.com

and

Rachel Jaffe Mauceri (*pro hac vice pending*)
1650 Market Street, Suite 3030
Philadelphia, Pennsylvania  19103
Telephone:  (215) 398-0556
rmauceri@rc.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of Mariner Health Central, et al.*

15